UNITED STATES of America,
Plaintiff–Appellant,

v.

Michael Paul WRAGGE,
Defendant–Appellee.

No. 88–3796.

United States Court of Appeals,
Eleventh Circuit.

Feb. 7, 1990.

Patty Stemler, Appellate Section, Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Ray Dvorak, Asst. Federal Public Defender, Orlando, Fla., for plaintiff-appellee.

* Judge Robert S. Vance was a member of the panel which heard oral argument but due to his death on December 16, 1989 did not participate in this decision. This case is decided by a quorum. *See* 28 U.S.C. § 46(d).

Before TJOFLAT, Chief Judge, VANCE *, Circuit Judge and PITTMAN **, Senior District Judge.

PER CURIAM:

Michael Paul Wragge, appellee, was indicted on February 5, 1979, on two counts of assaulting federal agents with a handgun in violation of 18 U.S.C. §§ 111, 1114 (1976). On August 24, 1988, the district court dismissed the indictment, holding that Wragge's sixth amendment right to a speedy trial had been violated. The Government appealed that dismissal. We vacate the district court's judgment and remand for further factfinding.

I.

On January 24, 1979, while on duty in the Federal Building in Tampa, Florida, Officer Robert Timberlake of the Federal Protective Service was killed by Wragge. During a struggle in one of the building's elevators, Wragge disarmed Officer Timberlake and mortally wounded him with his own gun. While the two men struggled, the elevator traveled to several floors. As the elevator doors opened on the third floor, Special Agent John Keller of the United States Customs Service ordered Wragge to drop the weapon. Wragge fired one shot at Keller, and Keller returned fire as the doors closed. The elevator then descended to the first floor where it was manually turned off and its doors were locked in an open position. Several FBI agents and three Tampa police officers had taken up position in the first-floor lobby. Wragge was told that if he dropped his weapon, he would not be harmed. In response, Wragge pointed his gun at an officer. The officer fired one shot at Wragge, and Wragge fired a shot in return. The police

** Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

officers and FBI agent Lawrence Curtain then fired twelve shots at Wragge, striking him four times.

Wragge was arrested, and on February 14, 1979, the Hillsborough County Grand Jury indicted him on charges of first degree murder, four counts of attempted first degree murder, and five counts of aggravated assault. Previously, on February 5, 1979, a federal grand jury had indicted Wragge on charges of assaulting Customs Service agent John Keller and FBI agent Lawrence Curtain. On May 14, 1979, the Hillsborough County Circuit Court found Wragge mentally incompetent to stand trial and committed him to the Florida Health and Rehabilitative Service. A federal detainer was lodged against Wragge with the Hillsborough County Sheriff's Office on January 20, 1980. Apparently, another federal detainer against Wragge had been lodged with the Hillsborough County Jail the preceding year. The record indicates that Wragge did not receive notice of either of these detainers.

On May 9, 1980, the Federal Public Defender was appointed to defend Wragge against the federal charges and has represented him throughout this appeal. The Government attempted to arraign Wragge on the federal charges on May 15, 1980, but was unable to do so due to Wragge's continuing incompetence.

On July 18, 1980, the Hillsborough County Circuit Court declared Wragge competent to stand trial on the state charges and ordered his return to the Hillsborough County Jail. Pursuant to a plea agreement, the circuit court, on April 2, 1981, found Wragge not guilty by reason of insanity on the first degree murder charge. Wragge pled nolo contendere to four of the remaining counts and received prison sentences totaling twenty years. The remaining state charges were dismissed. Because Wragge was found not guilty by reason of insanity, the circuit court committed him to the Department of Health and Rehabilitative Services for involuntary hospitalization on July 2, 1981.

Two more federal detainers were lodged against Wragge with the Florida Department of Corrections on July 9, 1981 and on February 16, 1982. The record indicates that Wragge received a copy of the July 9, 1981 detainer on June 29, 1982, but on February 18, 1982, he had been recommitted to the Department of Health and Rehabilitative Services after being found mentally ill and a danger to himself and others.[1] Wragge received no notice of the February 16, 1982 detainer. A fifth detainer was lodged against Wragge with the Department of Offender Rehabilitation on August 3, 1983. The record shows that Wragge received this detainer, which informed him of his right to speedy trial, on February 8, 1988.

In July 1984, the state circuit court found Wragge mentally competent to begin serving his twenty-year prison sentence and transferred him to the custody of the Florida Department of Corrections. On March 15, 1985, an Assistant United States Attorney contacted the Florida Parole and Probation Commission and requested that it inform Wragge of the outstanding federal detainer filed in Tampa and of his right to demand trial on the federal charges. During an interview with Wragge on March 29, 1985, Patricia Sanford, an examiner for the Florida Probation and Parole Commission, advised Wragge of the federal detainer filed against him in Tampa, Florida. The record is silent as to whether Ms. Sanford informed Wragge of his right to demand trial.

Almost three years passed with neither the Government nor Wragge or his counsel doing anything to bring the case to trial. On January 21, 1988, Ms. Lee Arnold, of the Polk Correctional Facility, contacted the United States Marshals Service in Tampa on Wragge's behalf and requested a form known as "USM–17, Notification Requirements—Speedy Trial Act." Wragge received this form on February 8, 1988, the same day he received the August 3, 1983 detainer, and, for the first time, demanded his right to a speedy trial. A writ of

---

1. Apparently, Wragge was discharged from the state hospital on February 12, 1982, and returned to the Hillsborough County Jail only to be recommitted on February 18, 1982.

habeas corpus *ad prosequendum* was issued, and Wragge was arraigned on March 31, 1988. Trial was set for May 1988 but was continued at Wragge's request until September 1988. On May 11, Wragge filed a motion to dismiss the federal indictment, arguing that his sixth amendment right to a speedy trial had been violated. He specifically alleged that the delay of over nine years between his indictment and his first scheduled trial was inexcusable and severely prejudiced his ability to defend against the charges contained in the indictment.

After an oral hearing, the district court granted Wragge's motion to dismiss without prejudice. The court stated that, for the purposes of the motion, it accepted the Government's contention that Wragge could not have been tried on the federal charges until March 1985. The district court then applied the four-factor test announced in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972),[2] and held that Wragge's sixth amendment right to a speedy trial had been violated. The court found that three of the four factors—length of delay, reason for the delay, and assertion of the right—weighed against the Government. The court found that Wragge's assertion of his right weighed against the Government because Wragge "asserted his speedy trial right when he first learned of it, in February 1988." Relying on *United States v. Dennard*, 722 F.2d 1510, 1513 (11th Cir. 1984), the court held that, because the first three factors weighed against the Government, it did not need to determine whether Wragge was actually prejudiced by the delay. Nevertheless, the court found that, despite the delay, Wragge would still be able adequately to present an incompetency defense.[3]

We think that the district court applied the appropriate legal test and that its findings of fact were not clearly erroneous.[4] The court's finding on when Wragge asserted his speedy-trial right, however, is so cursory that we are unable to exercise effective and meaningful appellate review. We therefore vacate the district court's judgment and remand for further factfinding on the issue of when Wragge first learned of his right to demand a trial by jury.

## II.

The sixth amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. When the Supreme Court articulated the now familiar *Barker* test to determine whether a defendant's sixth amendment right to a speedy trial has been denied, *see* 407 U.S. at 530, 92 S.Ct. at 2192, the Court was careful to note that none of the four factors was either necessary or sufficient to support a finding that a defendant's speedy-trial right had been violated, *see id.* at 533, 92 S.Ct. at 2193. The Court did emphasize, however, "that failure [of a defendant] to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532, 92 S.Ct. at 2193.

Because Wragge's demand for, or failure to demand, a jury trial during the alleged delay can significantly impact the balance of the *Barker* factors, we must know exactly when Wragge was made aware of his right to demand a jury trial. The district court found that "the defendant asserted

---

**2.** The four factors to be considered are: (1) length of delay; (2) reason for delay; (3) defendant's assertion of his right; and (4) prejudice to the defendant. *See Barker,* 407 U.S. at 530, 92 S.Ct. at 2192.

**3.** The court made this finding because it mistakenly believed that it could dismiss the case without prejudice, allowing the Government to bring a new prosecution against Wragge.

**4.** Determining whether Wragge's right to a speedy trial has been violated requires the application of legal principles to the facts of this case and thus involves a mixed question of law and fact. *See Glidewell v. Burden,* 822 F.2d 1027, 1028 (11th Cir.1987), *cert. denied,* 484 U.S. 1018, 108 S.Ct. 727, 98 L.Ed.2d 676 (1988). This court should exercise de novo review over the district court's legal conclusions, *see Adams v. Balkcom,* 688 F.2d 734, 739 (11th Cir.1982), and must apply the clearly erroneous standard to all findings of fact, *see LoConte v. Dugger,* 847 F.2d 745, 750 (11th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988).

his speedy trial right when he first learned of it, in February 1988." Nothing in the record directly and *substantially* contradicts the court's finding on this issue. Therefore, we cannot conclude that the district court's finding was clearly erroneous.[5]

Ordinarily, we would accept the court's finding and evaluate its other findings to determine whether it properly balanced the four *Barker* factors. In this case, however, we are not willing to accept, for the purpose of balancing the four factors, the court's finding that Wragge did not delay in asserting his speedy-trial right.[6] Holding that a district court's finding of fact is clearly erroneous does not provide the only basis for refusing to accept that finding. We may also refuse to accept those district court findings that are inadequate to permit meaningful appellate review. *See Curtis v. Commissioner*, 623 F.2d 1047, 1051 (5th Cir.1980).[7] We have held that, under Fed.R.Civ.P. 52(a), "the findings [of the trial court] must be [sufficiently] detailed to give [an appellate court] a clear understanding of the analytical process by which ultimate findings were reached *and to assure us that the trial court took care in ascertaining the facts.*" *See Self v. Great Lakes Dredge & Dock Co.*, 832 F.2d 1540, 1549 (11th Cir.1987) (emphasis added) (quoting *Golf City, Inc. v. Wilson Sporting Goods Co.*, 555 F.2d 426, 433 (5th Cir. 1977)), *cert. denied*, 486 U.S. 1033, 108 S.Ct. 2017, 100 L.Ed.2d 604 (1988). When the district court fails in this regard, the appropriate disposition of the case is to vacate the district court's judgment and remand for further factfinding. *Curtis*, 623 F.2d at 1053–54.

The district court's finding in this case that Wragge demanded a jury trial as soon as he became aware of his right to do so is clearly insufficient to allow meaningful appellate review of the finding. The question of when Wragge was informed of his right to demand a jury trial was heatedly contested in the parties' pleadings and their oral arguments before the district court. The record is not at all clear on this issue, and the district court resolved the issue simply by stating that "it appears that the defendant asserted his speedy trial right when he first learned of it, in February 1988." The district court said nothing else on that point, providing no reason for accepting Wragge's version of the facts and rejecting the Government's. *See Curtis*, 623 F.2d at 1053 (court failed to explain why it rejected Commissioner's proof on a disputed issue). Thus, although nothing in the record permits us to conclude that this finding is clearly *erroneous*, we think that nothing in the district court's order permits us effectively to review this finding to determine whether the court took adequate *care* in ascertaining the facts.

The district court's failure to provide any insight into its finding is especially troublesome in this case because an independent review of the record raises a suspicion that the district court might have failed to take adequate care in resolving the issue of when Wragge was informed of his right to demand a jury trial. Because Wragge suffered several periods of incompetency between 1979 and 1984, we consider what Wragge knew only during the period from October 1984 (when he was discharged from the Department of Health and Rehabilitative Services) to February 1988 (when he demanded a jury trial).

On January 21, 1988, Wragge requested the form used to demand a jury trial. Thus, we know that Wragge probably knew, or was informed, of his right to

---

5. As we note below, in January 1988, Wragge requested the form required to demand a trial. This fact undermines the district court's finding that Wragge first learned of his speedy-trial right in February 1988. We are not willing, however, to hold that the district court was clearly erroneous based on this rather insignificant discrepancy in dates.

6. Because we cannot evaluate one of the four *Barker* factors, we cannot properly perform the

balancing test. We therefore reserve discussion and balancing of the other three factors for another day.

7. In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

demand trial prior to February 1988, calling into question the district court's finding that Wragge learned of this right in February. The record, however, does not permit any other definite conclusions as to when Wragge learned of his right.

On March 29, 1985, Patricia Sanford, an examiner for the Florida Parole and Probation Commission, interviewed Wragge. Prior to the interview, Larry Hart, an Assistant United States Attorney, requested that the interviewer inform Wragge "that he [had] a Federal Detainer filed in Tampa against him and that he [had] the right to demand trial on these Federal charges." In a handwritten inter-office memorandum summarizing the interview, Ms. Sanford explained that "[t]his initial interview is being conducted per memo from Mr. Merle Davis, dated 3–15–85," in which Mr. Hart's request that Wragge be informed of his right to demand trial was noted. Ms. Sanford's memo then notes "that during the interview, I advised the subject of his Federal detainer in Tampa."

We simply cannot conclude, and presumably the district court could not conclude, from this sketchy evidence that Wragge was or was not informed during the interview with Ms. Sanford of his right to demand trial. Apparently, the interview was conducted pursuant to a memo that instructed the interviewer to inform Wragge of his right, but the summary of the interview indicates only that Wragge was informed of the detainer that had been lodged against him. We know that Wragge was represented at the time by a federal public defender, but the record does not indicate what his counsel might have known. And, although the Government proffered to the district court the testimony of Ms. Sanford, the court did not see fit to explore that potentially valuable source of information before dismissing the indictment.

Nothing else in the record provides any further help in determining when Wragge learned of his right to demand trial. Yet all seem to agree that this issue is of utmost importance in accurately balancing the *Barker* factors. Because the district court's finding on this point is inadequate to allow us to exercise effective appellate review, and because the record provides no conclusive evidence as to when Wragge learned of his right (precluding us from making a finding ourselves [8]), we vacate the district court's judgment and remand for further factfinding and any proceedings required to accomplish that task.

VACATED and REMANDED.

---

**8.** If the record is sufficiently complete to allow us to make the necessary finding as a matter of law, then we should do so without remanding to the district court. *See Gulf Towing Co. v. Steam Tanker, AMOCO New York,* 648 F.2d 242, 245 (5th Cir. Unit B June 1981).