**UNITED STATES of America, Plaintiff,**

v.

**Anthony TUMMOLO, Defendant.**

**No. 92–6078–Cr–Moore.**

United States District Court,
S.D. Florida,
Miami Division.

May 24, 1993.

Orlando Prescott, Asst. U.S. Atty., Miami, FL, for plaintiff.

Thomas Almon, Jr., Almon & Brodsky, Miami, FL, for defendant.

## ORDER ON DEFENDANT'S MOTION TO DISMISS INDICTMENT

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendant's Motion to Dismiss filed April 8, 1993. An evidentiary hearing on the motion was held on May 18, 1993. After considering the motion, responses, argument of counsel and the record herein, the Court enters the following order.

### Background

Anthony Tummolo is charged in a six count indictment with four counts of Armed Bank Robbery, under 18 U.S.C. § 2113(a), (d); one count of Use of a Firearm in the Commission of a Violent Offense, under 18 U.S.C. § 924(c); and one count of Possession of a Firearm by a Convicted Felon, under 19 U.S.C. § 922(g)(1). The Indictment in this case was returned on June 4, 1992. At the time the defendant was in the Broward County Jail pending state charges and awaiting execution of a sentence imposed in November of 1991 for state probation violation. On June 8, 1992, a detainer was lodged with the Broward Sheriff's Office pursuant to this indictment. Tummolo was informed of the detainer on June 9, 1992, but was not advised of his right to request a speedy disposition of the pending charges under the Interstate Agreement on Detainers.[1]

---

1. Generally, a detainer consists of two forms promulgated by the U.S. Marshal's Service: USM–16, which is a notice of detainer, and an attached USM–17, which is a request for a speedy trial.

The pending state charges were dismissed on July 21, 1992, and the defendant was sent to the North Florida Reception Center on July 30, 1993, to begin serving his sentence for probation violation. On November 6, 1992, he was released from state custody into federal custody under the detainer and eventually transferred to the Metropolitan Correctional Center in Miami, Florida. The first date that this case was scheduled for trial was February 8, 1993.

## Discussion

The Interstate Agreement on Detainers Act, ("IADA"), 18 U.S.C.A.App. pp. 585–620 (1985), provides a procedure by which a prisoner against whom a detainer has been lodged may request the speedy disposition of the charges giving rise to the detainer. Article III(c) of the IADA provides that:

> [t]he warden, commissioner of corrections, or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based.

IADA § 2, Art. III(c). If the prisoner requests final disposition of the charges, the jurisdiction that lodged the detainer must bring the prisoner to trial within 180 days. IADA § 2, Art. III(b); *United States v. Mauro*, 436 U.S. 340, 351–354, 98 S.Ct. 1834, 1842–43, 56 L.Ed.2d 329 (1978). If the prisoner is not brought to trial within the 180 day period, the court "shall enter an order dismissing the [indictment] with prejudice." IADA § 2, Art. IV(c) (emphasis provided); *United States v. Reed*, 910 F.2d 621, 624 (9th Cir.1990); *see also United States v. Boone*, 959 F.2d 1550, 1553 (11th Cir.1992). Where the detainer is lodged by the United States, the order dismissing the indictment may be with or without prejudice. IADA § 9(1), 18 U.S.C.A.App. § 9(1) (Supp.1993); *United States v. Iwuamadi*, 716 F.Supp. 420, 424–28

(D.Neb.1989), *aff'd*, 909 F.2d 509 (8th Cir. 1990).

Although Tummolo was informed that a detainer had been lodged against him, it is undisputed that he was never informed of his right to request final disposition of the charges under the IADA.[2] Tummolo insists that had he been informed of his rights under the IADA he would have invoked the 180 day period as provided by the IADA on July 30, 1992. The government concedes that through its negligence, Tummolo was not provided with a USM–17 speedy trial request form and, therefore, Tummolo was precluded from complying with the requirements of the IADA. It is undisputed that Tummolo was not brought to trial within 180 days of July 30, 1992.[3]

## I.

The instant motion to dismiss the indictment requires the court to make two determinations. First, the court must determine whether the indictment must be dismissed for a violation of the IADA speedy trial right when a prisoner fails to comply with the notice requirements of the IADA due to the government's negligence. The second determination is whether a violation of the IADA speedy trial requirement may be excused.

In order to trigger the 180 day clock, a prisoner must strictly comply with the requirements for requesting final disposition of the charges. *United States v. Reed*, 910 F.2d 621, 624 (9th Cir.1990). The requirements are set forth in Article III(a):

> [the prisoner] shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final dis-

---

2. The government notes that Tummolo was not entitled to be informed of his right to request disposition of the charges until July 30, 1992. The IADA does not apply to pretrial detainees. *United States v. Fulford*, 825 F.2d 3, 11 (3rd Cir.1987). Tummolo did not begin serving his sentence for probation violation until July 30, 1992. The government concedes that on this date the defendant should have been informed of his rights pursuant to Article III(c) of the IADA.

3. The parties agree that under the 180 day clock, Tummolo must have been brought for trial by January 27, 1993. This case was first set for trial on February 8, 1993.

position to be made of the indictment, information, or complaint:

. . . . .

The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.

IADA § 2, Art. III(a).[4] The government concedes that it failed to meet its obligations under the IADA to inform Tummolo of his rights. *See* IADA § 2, Art. III(c).

Where a prisoner has failed to comply with the technical requirements of the IADA because the government failed to meet its obligations, the remedial provisions of the IADA are applicable. *See, e.g., Reed,* 910 F.2d at 625 ("when the government has failed to fulfill its obligations under the Act, yet the prisoner has clearly attempted to get a speedy trial, courts have dismissed indictments not prosecuted within 180 days"); *United States v. Smith,* 696 F.Supp. 1381, 1384 (D.Or.1988) ("a prisoner's rights under the IADA should not be subject to intentional or negligent sabotage by government officials"). Based on the record herein, this Court finds that Tummolo's failure to comply with the notice requirements of the IADA was the result of government negligence. Therefore, his right to a speedy trial under the IADA was not eliminated.

4. Article III(b) provides that:

The written notice and request of final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, commissioner of corrections, or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

IADA § 2, Art. III(b).

5. At the conclusion of the evidentiary hearing on May 18, 1993, the Court requested the parties to file supplemental memoranda regarding the violation of the IADA speedy trial requirement. The government did not file a memorandum, but

The IADA unambiguously states that the court *shall* dismiss an indictment if the prisoner is not brought to trial within 180 days. IADA § 2, Art. IV(c) (emphasis provided). A necessary or reasonable continuance of the 180 day period may be granted for good cause shown. IADA § 2, Art. III(a). However, the continuance language of the IADA has been interpreted to contemplate a request for a continuance of the trial deadline *before* expiration of the 180 days and not as an excuse for failing to observe an uncontinued trial deadline. *Iwuamadi,* 716 F.Supp. at 424 (emphasis provided). In this case, the government does not rely upon the continuance provision of the IADA. Instead, the government argues that under a *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), analysis Tummolo is not entitled to a dismissal.[5]

In *Barker,* the Supreme Court established the approach to be used in determining whether a defendant's constitutional right to a speedy trial has been denied. However, Tummolo has not raised a Sixth Amendment claim and relies solely on the right to a trial in 180 days under the IADA. The protections created by the IADA are statutory rights which are not founded upon constitutional rights. *Yellen,* 828 F.2d at 1474 (citations omitted). Thus, the application of the constitutional standard for determining a violation of the Sixth Amendment right to a speedy trial is inapplicable to determining a violation of the IADA. *See Yellen,* 828 F.2d at 1474 (the constitutional standard of waiver is not the appropriate test for determining waiver of IADA rights). The

supplied the undersigned's chambers with copies of two cases: *Yellen v. Cooper,* 828 F.2d 1471 (10th Cir.1987) and *United States v. Odom,* 674 F.2d 228 (4th Cir.), *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2946, 73 L.Ed.2d 1341 (1982).

Upon reading these cases, the government presumably argues that Tummolo has waived his right under the IADA to a trial within 180 days. A prisoner may waive his rights under the IADA. *Yellen,* 828 F.2d at 1474. Waiver is shown by proof that the defendant affirmatively requested treatment in a manner contrary to the procedures outlined by the IADA. *Id.* (citations omitted). The government has failed to offer any such proof. *Cf. Odom,* 674 F.2d at 230 (prisoner waived his statutory right by consenting to a continuance).

government has failed to provide any authority suggesting that a violation of the IADA is analyzed under the *Barker* test.[6] Accordingly, this Court concludes that the *Barker* test is not the appropriate test for determining a violation of the statutory speedy trial right of the IADA.[7]

 This Court finds that the mandatory language of the IADA requires the dismissal of an indictment if the defendant is not brought to trial within 180 days and no continuances have been granted. This interpretation is consistent with the provisions of the Speedy Trial Act, 18 U.S.C. § 3161, *et seq.*, which should be construed together with the IADA. *United States v. Cephas*, 937 F.2d 816, 819 (2nd Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992). The Speedy Trial Act also contains mandatory language requiring dismissal of the indictment "if a defendant is not brought to trial within the time limit." 18 U.S.C. § 3162(a)(2); *see, e.g., United States v. Connor*, 926 F.2d 81, 83–84 (1st Cir.1991); *United States v. Kington*, 715 F.Supp. 781, 786 (N.D.Tex.1988). Accordingly, the indictment in this case should be dismissed.

## II.

 The IADA provides that dismissal may be with or without prejudice and sets forth certain factors to consider:

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: The seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice.

IADA § 9(1). Regarding the first factor, the Court finds that Tummolo is charged with serious offenses, that is, armed bank robbery and possession of a firearm by a convicted felon. Armed bank robbery alone, carries a

maximum term of imprisonment of 25 years. 18 U.S.C. § 2113(d).

The second factor considers the circumstances which led to the dismissal of this case. Here, the government's negligence resulted in the unintentional violation of the IADA. There is no evidence to indicate the government intentionally neglected or delayed the disposition of this case.

The Court must next examine the impact of a reprosecution on the administration of the IADA and the administration of justice. In this case, Tummolo has completed his state sentence and, therefore, the reprosecution will not impact the administration of the IADA. Lastly, reprosecution will not adversely affect the administration of justice. Tummolo cannot show that he was prejudiced by a trial date which was scheduled only eight days beyond the 180 day period. Accordingly, this court finds that the factors weigh in favor of dismissal without prejudice.

### Conclusion

For the foregoing reasons, it is

ORDERED AND ADJUDGED that the Motion to Dismiss be, and the same is hereby, GRANTED and, based thereon, the Indictment against Anthony J. Tummolo, Jr. is hereby DISMISSED WITHOUT PREJUDICE.

DONE AND ORDERED.

---

6. The government's reliance on *United States v. Wragge*, 893 F.2d 1296 (11th Cir.1990), is misplaced. *Wragge* involved a Sixth Amendment claim and did not discuss the requirements of the IADA.

7. In discussing the *Barker* test, the government claims that Tummolo is unable to show that the delay of his trial resulted in any prejudice. The Court notes that under the IADA a defendant is not required to demonstrate any prejudice arising from the delay of his trial. *Brown v. Wolff*, 706 F.2d 902, 906 (9th Cir.1983); *Smith*, 696 F.Supp. at 1383.