**UNITED STATES of America**

v.

**Frank COLLINS, a/k/a "Colin Frank," Defendant.**

**No. 93–CR–483 (JS).**

United States District Court, E.D. New York.

Sept. 21, 1994.

U.S. Attorney's Office, E.D.N.Y. by Eric D. Bernstein, Asst. U.S. Atty., Brooklyn, NY, for prosecution.

Freeman, Nooter & Ginsberg by Lee Ginsberg, New York City, for defendant.

## MEMORANDUM AND ORDER

SEYBERT, District Judge:

In the instant prosecution, defendant Frank Collins is charged with various crimes in a twelve-count superseding indictment. Specifically, defendant is charged with participating with other persons in four armed bank robberies between August 1991 and October 1991. Currently before the Court is defendant's motion to dismiss the indictment pursuant to the Interstate Agreement on Detainers Act, 18 U.S.C.App. II § 2, Art. III [alternatively, the "IAD" or the "Agreement"], on the basis that the United States Government (the "government") failed to notify Collins of a federal detainer [1] that was pending against him for more than 180 days. For the reasons that follow, the defendant's motion is denied.

### BACKGROUND

For purposes of this motion, the chronology of events asserted by the government—to the extent uncontroverted by the defendant—may be summarized as follows.

On November 12, 1992, defendant Frank Collins was arrested in Nassau County in connection with his alleged involvement in shoplifting and auto theft. That same day,

---

1. "A detainer is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when release of the prisoner is imminent." *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985).

he was arraigned in Nassau County First District Court on charges of Criminal Possession of Stolen Property in the Third Degree, and Petit Larceny. At the arraignment, bail was set at $2,000 on the stolen property charge and $500 on the larceny charge. The defendant did not make bail and was held at the Nassau County Jail ("NCJ").

At the time of his arrest, Collins was on parole in New York State as a result of his conviction on June 19, 1989 in Kings County Superior Court for Criminal Possession of Stolen Property in the Fourth Degree. As a result of his November 12th arrest, the New York State Division of Parole issued a parole violation warrant against the defendant and, on November 13th, lodged a detainer against him at the NCJ.

Also on November 13, 1992, the United States Marshals Service lodged a detainer against Collins at the NCJ charging the defendant with armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d). The federal detainer lodged by the Marshals did not direct the NCJ authorities to notify Collins either of its existence or of Collins' right to request a final disposition of the charge on which the detainer was based. The government acknowledges that it was not until the defendant was taken into federal custody on May 14, 1993—more than 180 days after the federal detainer was issued—that the defendant was first notified of the existence of such detainer and the pending federal charges against him.

On December 17, 1992, in Nassau County First District Court, Collins pled guilty to Unauthorized Use of a Vehicle in the Third Degree.

On January 14, 1993, a hearing was held on Collins' parole violation at the NCJ. Following the hearing, Collins' parole was revoked and he was assessed a sentence of eleven months, the maximum allowable sentence for his parole violation.

On January 19, 1993, Collins was sentenced to one year in prison in connection with the New York State unauthorized use of a vehicle charge. In addition, on that same day Collins pled guilty to the New York State petit larceny charge and received a consecutive three-month sentence.

On April 30, 1993, Collins was indicted in the Eastern District of New York with codefendant Cleveland Zanders on charges of conspiracy to commit armed bank robbery, armed bank robbery, and using a firearm in connection with the alleged bank robberies.

As earlier alluded, on May 14, 1993 Collins was taken from the NCJ into federal custody pursuant to a writ of habeas corpus ad prosequendum that was issued as a result of the federal indictment. On that same day, codefendant Zanders was arraigned on the indictment by Judge Hurley. Collins also was scheduled to be arraigned on the indictment on that day, but the United States Marshals Service inadvertently failed to produce him for the arraignment.

On May 17, 1993, Collins was produced and arraigned on the indictment before Magistrate Judge A. Simon Chrein.

On August 18, 1993, the government sought and obtained the 12-count superseding indictment that is currently pending against Collins.

Defendant now moves, pursuant to the Interstate Agreement on Detainers Act, 18 U.S.C.App. II § 2, Art. III, to dismiss the indictment on the basis that the government failed to notify him timely of the federal detainer's existence. According to the defendant, the government's failure to provide timely notice deprived him of his right under the IAD to request a final determination of the charges underlying the detainer. Collins further asserts that had he been notified of the detainer's existence, he immediately would have requested a final determination of the charges. He therefore contends that the resulting prejudice warrants the dismissal of the indictment.

The government has filed a brief in opposition to the defendant's motion. It is the government's position that the IAD did not apply to Collins until January 14, 1993 when he was sentenced upon a parole violation, and that prior to January 14th the defendant's status was that of a pretrial detainee—a status that the defendant concedes is not entitled to the protections of the IAD. The

government therefore asserts that even upon factoring in a subsequent 14–day period chargeable to the government, the applicable statutory period for bringing the defendant to trial would not have elapsed.

## DISCUSSION

The Interstate Agreement on Detainers Act, 18 U.S.C.App. II, is a compact among 48 states, the District of Columbia, and the Federal Government that prescribes procedures for a participating state to gain custody of a prisoner incarcerated in another jurisdiction in order to try him on criminal charges. *See Reed v. Farley,* —— U.S. ——, ——, 114 S.Ct. 2291, 2293, 129 L.Ed.2d 277 (1994). Enacted in 1970, the IAD is designed to encourage " 'the expeditious and orderly disposition of charges outstanding against a prisoner and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints.' " *United States v. Cephas,* 937 F.2d 816, 818 (2d Cir.1991) (quoting *United States v. Mauro,* 436 U.S. 340, 343, 98 S.Ct. 1834, 1839, 56 L.Ed.2d 329 (1978)), *cert. denied,* —— U.S. ——, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992). Accordingly, the IAD serves to limit the potentially adverse effect upon a prisoner's treatment and rehabilitation that may be posed by the pendency against him of a detainer based upon an untried charge. *See* 18 U.S.C.App. II § 2, Art. I (statement of legislative findings).

The IAD contains two central provisions. First, Article III provides a procedure whereby a prisoner against whom a detainer has been filed may demand a disposition within 180 days of the charges giving rise to the detainer. *See Cephas,* 937 F.2d at 818 (quoting *Mauro,* 436 U.S. at 351, 98 S.Ct. at 1842). Second, Article IV " 'provides the means by which a prosecutor who has lodged a detainer against a prisoner in another State can secure the prisoner's presence for disposition of the outstanding charges.' " *Id.* (quoting *Mauro,* 436 U.S. at 351, 98 S.Ct. at 1842). After a detainer is filed and the prosecutor has brought "the prisoner to the receiving state for prosecution, the government must bring him to trial within 120 days." *Id.*

In the instant case, the defendant invokes Article III of the IAD as the controlling provision impelling the dismissal of the government's indictment. Article III provides in pertinent part:

> Whenever a person has entered upon a *term of imprisonment* in a penal or correctional institution of a party State, and whenever during the continuance of the *term of imprisonment* there is pending in any other party State [2] any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: Provided, That, for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

18 U.S.C.App. II § 2, Art. III(a) (emphasis in original omitted) (emphasis added with respect to "term of imprisonment"). Citing the foregoing passage, Collins asserts that the government failed to notify him of the detainer until he had been taken into federal custody. He further contends that had he been notified of his rights under the IAD, he would exercised them promptly by requesting a final determination of the charges underlying the detainer. Consequently, Collins asserts that his failure to trigger the 180–day clock under Article III should be waived since it was due entirely to the government's failure to fulfill its obligations under the Agreement. On the basis of such waiver, he therefore argues that the indictment should be dismissed because more than 180 days

---

**2.** Both New York State and the United States of America are "party States" to the IAD. *See* N.Y.Crim.Proc.Law § 580.20 (McKinney 1984); IAD § 2 preamble ("The Interstate Agreement on Detainers is hereby enacted into law and entered into by the United States on its own behalf ... with all jurisdictions legally joining....").

passed between the date that the federal detainer was first lodged against him and the date that he was first notified of his rights under the IAD. *See United States v. Tummolo*, 822 F.Supp. 1561, 1564 (S.D.Fla.1993) ("Where a prisoner has failed to comply with the technical requirements of the [IAD] because the government failed to meet its obligations, the remedial provisions of the [IAD] are applicable.") (citing *United States v. Reed*, 910 F.2d 621, 625 (9th Cir.1990); *United States v. Smith*, 696 F.Supp. 1381, 1384 (D.Or.1988)).

The government, in turn, argues that even though it failed to comply with its obligation of prompt notification under the IAD, the dismissal of the indictment is not warranted here because the IAD is not triggered until a person enters upon a "term of imprisonment," and the applicability of this condition precedent to the instant case merits a determination that only 134 days of creditable time have elapsed for purposes of the Agreement. Further to this point, the government contends that the IAD first was implicated on January 14, 1993 when Collins was sentenced on a parole violation, and that only 120 days elapsed between such date and May 14, 1993—the date that Collins was taken into federal custody. To determine any addition to this amount, the government cites *United States v. Cephas*, 937 F.2d 816, 819 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992), for the proposition that "if a circumstance qualifies as an exclusion under the speedy trial act, [18 U.S.C. § 3161(h)(1)–(9) ], it also suffices to toll the time periods of the detainer act." *Cephas*, 937 F.2d at 819. Applying this standard, the government contends that since Collins was taken into federal custody, only 14 days have elapsed that are chargeable to the government under the Speedy Trial Act, and therefore, under the IAD: (1) the seven days that elapsed between May 14, 1993 (the date Collins was taken into federal custody) and May 21, 1993 (the date of the first status conference before Judge Hurley), and (2) the seven days that elapsed between June 18, 1993 (when the first waiver of speedy-trial time expired) and June 25, 1993 (when the motion schedule was revised and another waiver of speedy-trial time was executed). A review of the docket sheet shows that at all other times, speedy-trial time was excluded either by express agreement and waiver, or by the pendency of motions. Thus, if the IAD indeed did not become applicable to Collins until January 14, 1993, the aggregate number of days chargeable to the government thereunder would total 134—well below the 180-day threshold for triggering the IAD's remedial provisions.

In his reply brief, the defendant concedes that the IAD is not applicable to a person, such as a pretrial detainee, who is not in "the continuance of [a] *term of imprisonment.*" 18 U.S.C.App. II. § 2, Art. III(a). *See United States v. Saffeels*, 982 F.2d 1199, 1203 (8th Cir.1992) ("It is well established that a pretrial detainee is not a person who has entered upon a 'term of imprisonment' so as to be entitled to the protections of the IAD."), *vacated on other grounds*, —— U.S. ——, 114 S.Ct. 41, 126 L.Ed.2d 12 (1993); *United States v. Currier*, 836 F.2d 11, 16 (1st Cir. 1987) (The IAD applies "exclusively to prisoners who are actually serving their sentences, and not to pretrial detainees."); *United States v. Wilson*, 719 F.2d 1491, 1494–95 (10th Cir.1983) (Person held in prison facility awaiting final sentencing is not covered by the IAD.); *see also Currier*, 836 F.2d at 16 (The IAD does not "apply to those who have been convicted but not yet sentenced."); *Crooker v. United States*, 814 F.2d 75, 77 (1st Cir.1987) (Even a sentenced prisoner will not be covered by the IAD unless he has been taken to the correctional facility to commence service of his sentence.). Nevertheless, the defendant argues that *his* circumstances are different and should not warrant a blanket application of this rule. Specifically, defendant argues that since he was awaiting the inevitable revocation of his parole and had additional New York charges pending against him at the time that the federal detainer was lodged, both he and the authorities at the NCJ had a strong interest in his rehabilitation program sufficient to trigger the protections of the IAD. Although the defendant cites to numerous cases commenting upon the hardships imposed upon a prisoner through an unregulated system of detainers, none of these authorities address the precise

issue of whether an incarcerated person awaiting the revocation of parole is covered by the Agreement. *See, e.g., United States v. Roy,* 771 F.2d 54, 57–58 (2d Cir.1985) (noting that, where the defendant was concurrently serving a sentence imposed pursuant to a conviction, the pendency of charges against the defendant did not diminish his interest in his rehabilitation), *cert. denied,* 475 U.S. 1110, 106 S.Ct. 1520, 89 L.Ed.2d 918 (1986); *United States v. Ford,* 550 F.2d 732, 737–40 (2d Cir.1977), *aff'd sub nom. United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978).

While the issue of a prisoner's coverage under the IAD prior to the revocation of his parole does not appear to have been confronted directly by the Second Circuit Court of Appeals, the weight of authority rejects the Agreement's application to this context. *See United States v. Reed,* 620 F.2d 709, 711 (9th Cir.), *cert. denied,* 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980); *United States v. Dobson,* 585 F.2d 55, 58 (3d Cir.), *cert. denied,* 439 U.S. 899, 99 S.Ct. 264, 58 L.Ed.2d 247 (1978); *United States v. Roy,* 597 F.Supp. 1210, 1215 (D.Conn.1984) (noting that until the revocation of parole, for purposes of the IAD a defendant's status is that of a pretrial detainee), *aff'd,* 771 F.2d 54 (2d Cir.1985), *cert. denied,* 475 U.S. 1110, 106 S.Ct. 1520, 89 L.Ed.2d 918 (1986). In arriving at this conclusion, the courts have noted that a parole violator simply does not have "a sufficient interest in the rehabilitation programs of his confining institution to justify invocation of the Act." *Reed,* 620 F.2d at 711; *see Dobson,* 585 F.2d at 61.

The Court finds the prevailing jurisprudential view to be persuasive and concludes that the defendant was not covered by the IAD until his parole was revoked on January 14, 1993. In reaching this determination, the Court notes the legislative finding explicated within the Agreement indicating that the IAD was enacted to ameliorate the often-deleterious effect that "detainers based on untried indictments, informations, or complaints" may have in producing "uncertainties which obstruct programs of prisoner treatment and rehabilitation." 18 U.S.C.App. II § 2, Art. I. In commenting

upon the Agreement's legislative history, the Supreme Court has quoted the following passage:

> "The inmate who has a detainer against him is filled with anxiety and apprehension and frequently does not respond to a training program. He often must be kept in close custody, which bars him from treatment such as trustyships, moderations of custody and opportunity for transfer to farms and work camps. In many jurisdictions he is not eligible for parole; there is little hope for his release after an optimum period of training and treatment, when he is ready for return to society with an excellent possibility that he will not offend again. Instead, he often will become embittered with continued institutionalization and the objective of the correctional system is defeated."

*Carchman v. Nash,* 473 U.S. 716, 720, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985) (quoting Council of State Governments, *Suggested State Legislation, Program for 1957,* at 74 (1956) [hereinafter *Suggested State Legislation* ] ).

It appears to the Court that a person awaiting the revocation of parole lacks the same concrete interest in the rehabilitation programs of his institution as a person whose parole, in fact, has been revoked. Although Collins terms his parole revocation as "inevitable," it should not be overlooked that the revocation of parole requires a separate administrative proceeding that accords the individual some opportunity to be heard and to voice any mitigating circumstances; indeed, the revocation of parole is not a foregone conclusion in all cases. Given the indefiniteness of the prisoner's parole revocation or the ensuing term of imprisonment, it follows that a correctional facility, notwithstanding the pendency of a detainer, would be disinclined to assign the prisoner to a training or rehabilitative program until his parole status had been resolved. In addition, as a separate matter, an incarcerated person—currently on parole—would not have a concrete legal interest in subsequently becoming eligible for parole until her present parole status had been revoked. *Cf. Carchman,* 473 U.S. at 720, 105 S.Ct. at 3403 (quoting *Suggested*

*State Legislation, supra,* at 74) (noting that, in many jurisdictions, the pendency of a detainer upon a prisoner may adversely affect her eligibility for parole). Accordingly, the Court concludes that prior to the revocation of his parole, Collins' interest in the rehabilitation programs of his confining institution was *de minimis,* if not inchoate, and therefore insufficient to trigger invocation of the IAD.

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss the indictment is denied.[3]

SO ORDERED.

---

**3.** The Court notes that the government's earlier motion before Judge Hurley to admit evidence pursuant to Rule 404(b) remains in abeyance pending oral argument prior to trial.