UNITED STATES of America Plaintiff,

v.

William Luke CARNES, Defendant.

No. 97–cr–80053.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 8, 1999.

Mark Osler, Asst. U.S. Atty., Detroit, MI, for plaintiff.

Richard J. Amberg, Jr., Waterford, MI, for defendant.

*OPINION AND ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS FOR VIOLATION OF THE INTERSTATE AGREEMENT ON DETAINERS AND TO CONSOLIDATE COUNTS FOR MULTIPLICITY AND SEVER COUNTS FOR IMPROPER JOINDER*

ROSEN, District Judge.

## I. INTRODUCTION

In the instant prosecution, a four-count Second Superceding Indictment charges Defendant with felon in possession of firearm, felon in possession of ammunition, interception of wire communication, and tampering with a witness. The case is presently before the Court on a Motion to Dismiss for Violation of the Interstate Agreement on Detainers ("IAD"), 18 U.S.C.App. II, filed by Defendant on November 18, 1998. This motion requires the Court to determine whether the IAD applies to a parolee detained pending a parole revocation hearing, an issue of first impression in the Sixth Circuit. The Court also addresses Defendant's Motion to Consolidate Counts for Multiplicity and Sever Counts for Improper Joinder filed on November 3, 1998.

A hearing was held on Defendant's motions on January 7, 1999. Having heard the oral arguments of counsel and having reviewed the briefs and supporting documents submitted by the parties, the Court

is now prepared to rule on Defendant's motions. This Opinion and Order sets forth the Court's ruling

## II. BACKGROUND

On January 14, 1997, Michigan parole officers arrested Defendant for violation of his Michigan parole. During the course of the arrest, officers seized a firearm, ammunition, and tapes evidencing a wire tap from Defendant's residence.[1]

A Federal Complaint was issued on January 16, 1997, charging Defendant with a violation of 18 U.S.C. § 922(g)(1), felon in possession of a firearm. Because Michigan authorities were holding Defendant, the United States Marshals filed a detainer on January 22, 1997. Defendant made his initial appearance before Magistrate Pepe on February 25, 1997, and he was temporarily detained by Federal authorities. Magistrate Morgan held a detention hearing on February 26, 1997, after which Defendant was returned to state custody to appear at a state court hearing.

On March 5, 1997, the Government indicted Carnes on one count of 18 U.S.C. § 922(g)(1), felon in possession of a firearm. He was arraigned on the indictment on April 2, 1997, and at that time signed a waiver of his IAD rights.

On July 17, 1997, a First Superceding Indictment was issued against Defendant adding the three additional counts listed above. Defendant was arraigned on the First Superceding Indictment on July 22, 1997.

On August 25, 1998, the Court entered an Order dismissing the First Superceding Indictment without prejudice for violations of the Speedy Trial Act, 18 U.S.C. § 3161 et seq. Following the dismissal, the Court returned Defendant to the custody of the Michigan Department of Corrections.

The Government obtained an identical Second Superceding Indictment on August

---

**1.** Michigan authorities apparently received information that Defendant was not living at the

address provided to parole officers.

27, 1998. On August 28, 1998, the Court issued a write of habeas corpus ad prosequendum to return Defendant to federal custody. He was arraigned on the Second Superceding Indictment on September 15, 1998, and has remained in federal custody since this time. State authorities have yet to permanently revoke Defendant's parole.[2]

### III. *ANALYSIS*

**A. *Motion to Dismiss for Violation of the IAD***

As noted above, Defendant moves for dismissal of the Second Superseding Indictment for alleged violations of the IAD. Specifically, Defendant alleges violations of § 2, Art. IV(c), the 120 day speedy trial provision, and § 2, Art. IV(e), the antishuttling provision. In response, the Government contends that the IAD does not apply to parolees such as Defendant who are detained pending a parole revocation hearing.

**1. *Applicability of the IAD***

█ As an initial matter, the Court addresses the Government's contention that the IAD does not apply to an individual in state custody pending a parole revocation hearing. The IAD "prescribes procedures for a participating state to obtain custody of a prisoner incarcerated in another jurisdiction in order to try the prisoner on criminal charges." *United States v. Collins*, 863 F.Supp. 102, 104 (E.D.N.Y.1994). Because the pendency of charges in another jurisdiction may obstruct a prisoner's treatment and rehabilitation, the IAD

seeks to "encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations, or complaints." 18 U.S.C.App. II § 2, Art. I (statement of legislative findings). Thus, as its primary goal, the IAD seeks to minimize interference with a prisoner's treatment and rehabilitation programs. *United States v. Dobson*, 585 F.2d 55, 60 (3rd Cir.1978), *cert denied*, 439 U.S. 899, 99 S.Ct. 264, 58 L.Ed.2d 247 (1978); *See also, United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978).

By its express terms, the IAD applies only to prisoners "serving a term of imprisonment in any party State."[3] 18 U.S.C.App. II § 2, Art IV(a).[4] Accordingly, it is well established in the Sixth Circuit that the IAD does not apply to a person "imprisoned awaiting disposition of pending charges and who has not been sentenced to a term of imprisonment." *United States v. Muhammad*, 948 F.2d 1449, 1453 (6th Cir.1991), *cert denied*, 502 U.S. 1119, 112 S.Ct. 1239, 117 L.Ed.2d 472 (1992) (citing *United States v. Roberts*, 548 F.2d 665, 671 (6th Cir.1977)). Arguing by analogy to *Muhammad*, the Government equates Defendant's status—detained pending a parole revocation hearing—to an individual detained pending trial or sentencing, and therefore asserts that the IAD does not apply. Defendant contests the Government's position, arguing that pursuant to M.C.L.A. § 791.238, a parolee retains his status as a prisoner during the entire period of his parole.[5]

2. Following a preliminary parole violation hearing on March 14, 1997, Defendant was held at Oakland County Jail pending submission of a $25,000 bond.

3. The United States is a party to the IAD in both in its capacity as a sending and a receiving state. *Mauro*, 436 U.S. at 354, 98 S.Ct. at 1844.

4. § 2, Art. IV(a) provides, in pertinent part: The appropriate officer of the jurisdiction in which an untried indictment, information,

or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available in accordance with article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated ...

5. Specifically, M.C.L. 791.238 provides, in pertinent part:

Although the Sixth Circuit has never addressed the precise issue of whether the IAD applies to a parolee detained pending a revocation hearing, numerous other jurisdictions have, finding that the IAD does not apply. *See e.g., United States v. Dobson,* 585 F.2d at 61; *United States v. Reed,* 620 F.2d 709, 711 (9th Cir.1980), *cert denied,* 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980); *Collins,* 863 F.Supp. at 106. In denying an IAD claim in *Dobson,* the Third Circuit convincingly reasoned as follows:

Hence even though we recognize that the basis for a parolee's detention is the underlying sentence from which he has been paroled, until such time that the parole violator is recommitted after a hearing, and his incarceration thereby made certain and fixed as to duration, no term of imprisonment can be said to have commenced or resumed. In this respect a parole violator is no different than a pretrial detainee who is merely awaiting trial and who, until conviction and sentencing, cannot commence service of a term of imprisonment ... In short, just as pretrial incarceration is a transitory and impermanent state, incarceration pursuant to a parole violation warrant is just as transitory and impermanent. Both place the prisoner in no more than a 'holding pattern.'

*Dobson,* 585 F.2d at 59. The Third Circuit thus concluded that "it would be anomalous to apply a statute which was enacted to permit the prisoner to secure a greater degree of certainty as to his future to a parole violator whose prehearing custody, being uncertain and temporary, has no relation to the purposes which the Act seeks to promote." *Dobson,* 585 F.2d at 61 (internal quotation omitted).

(1) Each prisoner on parole shall remain in the legal custody and under the control of the department.

\* \* \* \* \* \*

(6) A parole shall be construed as a permit to the prisoner to leave the prison, and not

Similarly, the Ninth Circuit explained its denial of a detained parolee's IAD claim in *Reed* as follows:

[A]ppellant was not serving a "term of imprisonment" within the meaning of the statute. Appellant was in custody awaiting trial on state and federal charges and awaiting revocation of his parole arising out of an earlier state charge. The purpose of the Interstate Agreement on Detainers Act is to minimize the adverse impact of a foreign prosecution on rehabilitative programs of the confining jurisdiction. We agree with the decisions of other circuits that neither a pretrial detainee nor a parole violator has a sufficient interest in the rehabilitation programs of his confining institution to justify invocation of the Act.

620 F.2d at 711 (internal citations and quotations omitted).

Having reviewed *Dobson* and *Reed,* the Court finds the logic of the Third and Ninth Circuits compelling. Although a parolee technically continues to serve the sentence imposed by the court, he is not actually serving a term of imprisonment as required under the express provisions of the IAD. Furthermore, until actual revocation of parole, a parolee's status remains uncertain, and his interest in the rehabilitation programs of his confining institution is "insufficient to trigger invocation of the IAD." *Collins,* 863 F.Supp. at 107. Accordingly, the Court finds that the IAD does not apply in the instant case.

### 2. *Speedy Trial Provision*

■ Even assuming, arguendo, that the IAD does apply, Defendant has suffered no violation of his rights under the Agreement. As noted above, Defendant contends that the Government violated the

as a release. While at large, the paroled prisoner shall be considered to be serving out the sentence imposed by the court.

IAD's 120 day speedy trial rule, which provides:

> In respect of any proceeding made possible by this article, trial shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

18 U.S.C.App. II § 2, Art. IV(c). District courts should construe the IAD's speedy trial provisions consistent with the Speedy Trial Act. *United States v. Cephas*, 937 F.2d 816, 819 (2nd Cir.1991), *cert denied*, 502 U.S. 1037, 112 S.Ct. 884, 116 L.Ed.2d 788 (1992).

▆ In the present case, Defendant alleges that his IAD speedy trial clock commenced to run on February 25, 1997, the date of his initial appearance before Magistrate Pepe, and that 164 days of non-excludable delay elapsed between that date and the filing of his Motions to Consolidate and Sever on November 3, 1998.[6] This calculation fails to account, however, for the Court's dismissal of the First Superceding Indictment for violations of the Speedy Trial Act on August 25, 1998. This dismissal reset the speedy trial clock pursuant to 18 U.S.C. § 3161(d)(1), which provides that the speedy trial clock starts anew "[i]f any indictment or information is dismissed upon the motion of the defendant."[7] *See also, Mars v. United States*, 463 F.Supp. 87, 89 (E.D.Mich.1978) (finding that the dismissal of a federal complaint reset the IAD 120 day speedy trial clock). Because the 120 day speedy trial requirement only applies to prisoners transferred when a complaint, information, or indictment is pending, Defendant's speedy trial clock did not commence to run again until his return to federal custody pursuant to the Second Superceding Indictment.

Thus, for purposes of the present motion, Defendant's IAD speedy trial clock began to run on September 15, 1998, the date of his return to federal custody for the arraignment on the Second Superceding Indictment. The period from September 15, 1998 to Defendant's filing of motions to consolidate and sever on November 3, 1998 involved only 48 days, well within the 120 day requirement.[8] Accordingly, assuming the IAD applies, the Court finds no violation of the § 2, Art. IV(c) speedy trial right.

### 3. *Anti–Shuttling Provision*

Defendant also claims multiple violations of the IAD anti-shuttling provision, which provides:

> If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

18 U.S.C.App. II § 2, Art. IV(e). Specifically, Defendant argues that the Government violated Article IV(e) by returning him to state custody on February 26, 1997 and again following dismissal of the First Superceding Indictment on August 25, 1998.

---

**6.** Defendant counts 38 days between February 25, 1997 and his arraignment on the original indictment on April 2, 1997; 77 days found non-excludable by the Court pursuant to Defendant's Speedy Trial Act motion; and 49 days between Defendant's arraignment on the Second Superseding Indictment and the filing of motions on November 3, 1998 for a total of 164 days. [Reply Brief, p. 4].

**7.** As noted above, the Court should construe the IAD speedy trial provisions consistent with the Speedy Trial Act. *Cephas*, 937 F.2d at 819.

**8.** Defendant's filing of motions on November 3, 1998 tolled the speedy trial clock pursuant to 18 U.S.C. § 3161(h)(1)(F).

■ In first analyzing Defendant's claim as to February 26, 1997, the Court notes that Defendant fails to account for the special IAD provisions in § 9 that apply when the United States is a receiving state.

> Notwithstanding any provision of the agreement on detainers to the contrary, in a case in which the United States is a receiving State-
>
>    *     *     *     *     *     *
>
> (2) it shall not be a violation of the agreement on detainers if prior to trial the prisoner is returned to the custody of the sending State pursuant to an order of the appropriate court issued after reasonable notice to the prisoner and the United States and an opportunity for a hearing.

18 U.S.C.App. II, § 9(2).

In the present case, Defendant was returned to state custody on February 26, 1997 following a detention hearing before Magistrate Morgan. An examination of the hearing transcript reveals that Defendant was provided notice of his impending return to state custody and that he consented to the return in order to attend a February 28 hearing in Oakland County: [9]

> THE COURT: Okay. All right. Read your—read all your materials over, make sure you understand what I've written down on the consent order of detention. And we'll see you back here

when your lawyer and the Government agree to bring you back here.

> THE DEFENDANT: Okay

[Transcript, p. 7]. In light of the fact that Defendant was clearly provided both notice and a hearing prior to his return to state custody, the Court finds that § 9(2) bars any shuttling claim as to February 26, 1997.[10]

■ Likewise, the Government did not violate Article IV(e) by releasing Defendant to the custody of the Michigan Department of Corrections following the dismissal of the First Superceding Indictment on August 25, 1998. At this time, no federal complaint, information, or indictment was pending as required for a violation of the anti-shuttling provision. Moreover, during the pendency of the Second Superceding Indictment, Defendant has not been returned to state custody. Accordingly, no grounds whatsoever exist for dismissal of the Second Superceding Indictment.

## B. *Motion to Consolidate Counts I and II for Multiplicity*

■ Defendant also moves the Court to consolidate counts I and II of the Second Superseding Indictment, the firearm and ammunition counts, for multiplicity. Both Counts I and II involve violations of 18 U.S.C. § 922(g)(1), which provides:

> (g) It shall be unlawful for any person-
>
>   (1) who has been convicted in any court of a crime punishable by impris-

---

**9.** Significant conversations occurred off the record at the Wednesday February 26, 1997 detention hearing. The transcript as whole, however, suggests that Defendant requested that the Court return him to state custody, and that he was concerned about making his Friday hearing:

> THE COURT: Are you going to be able to get him back to Wayne—to Oakland County Jail?
> THE DEFENDANT: Like tomorrow?
> THE MARSHALL: I'd have to speak with the supervisor about that part.
> THE DEFENDANT: There is two other people that rode with me up there—up here from here, they're going back with me, I

believe. They came from there with me— one guy did, and he'll probably be going back tomorrow, too, or something. I'm sure that's all right. That's what I understand, because that hearing is Friday.
[Transcript, p. 5].

**10.** Defendant also wrongly asserts that a violation of the anti-shuttling provision would permanently deprive the Court of jurisdiction in this case. [Reply Brief, p. 3]. In point of fact, the IAD clearly provides that, notwithstanding any other IAD provision, when the United States is a receiving State "any order of a court dismissing any indictment, information, or complaint may be with or without prejudice." 18 U.S.C.App. II § 9(1).

onment for a term exceeding one year;

    &ast;     &ast;     &ast;     &ast;     &ast;     &ast;

to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, *any firearm or ammunition;* or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

(emphasis added). Defendant contends that possession of the firearm and ammunition constitute a single crime in light of the fact that both items were seized at the same time and place on January 14, 1997. He further argues that allowing both counts to proceed to trial could invite a compromise jury verdict, and would provide the Government with two opportunities to convict for the identical crime.

In *United States v. Throneburg,* 921 F.2d 654, 657 (6th Cir.1990), the Sixth Circuit addressed the precise issue raised by Defendant, finding that "the separate counts for the ammunition and the gun—counts which require other factual proof—are appropriate separate units of prosecution for purposes of trial, although they would merge for purposes of sentencing." In reaching this decision, the Sixth Circuit reasoned as follows:

> It is elemental, of course, that the prosecution has broad discretion in bringing criminal cases, and that the district court has discretion in deciding whether to require the prosecution to elect between multiplicitous counts especially when the mere making of the charges would prejudice the defendant with the jury. We may reverse only for an abuse of discretion.

*Throneburg,* 921 F.2d at 657 (internal citation and quotation omitted).

Returning to the present case, the Court finds that the prosecution may charge the firearm and ammunition violations in separate counts. Defendant asks the Court to adopt the position that separate counts under § 922(g)(1) are only appropriate when the seizure of firearms and ammunition take place at different times. This argument fails to recognize, however, that *Throneburg* also involved a near simultaneous seizure of a firearm and ammunition following a traffic stop. 921 F.2d at 655. Accordingly, the Court finds no substantive different between the instant case and *Throneburg.*

Moreover, additional facts weigh in favor of permitting separate counts in the present case. At the time of the seizure, the officers located the firearm in a locked box, while they found the ammunition, which fit other firearms than the one seized, laying openly in the bedroom. Thus, Defendant could potentially argue that he was unaware of the existence or presence of the firearm, an argument inapplicable to the ammunition. Accordingly, the Court finds that Defendant's Motion to Consolidate Counts for Multiplicity is without merit.

### C. *Motion to Sever Counts III and IV for Improper Joinder*

■ Finally, Defendant argues that the prosecution improperly joined Count III (interception of wire communication) and Count IV (tampering with a witness) to the firearm and ammunition charges in the Second Superceding Indictment. Fed. R.Crim.P. 8(a) permits the joinder of two or more offenses in the same indictment if the offenses charged involve "transactions connected together or constituting parts of a common scheme." "The joinder provisions of Rule 8(a) [Joinder of Offenses] are more liberal than those of 8(b) [Joinder of Defendants] because they allow inclusion of offenses of the 'same or similar character' as well as those arising from the same act or transaction or a common scheme." *United States v. Bibby,* 752 F.2d 1116, 1121 (6th Cir.1985), *cert denied,* 475 U.S. 1010, 106 S.Ct. 1183, 89 L.Ed.2d 300 (1986). A Defendant may seek relief from a prejudicial joinder of offenses pursuant to Fed.R.Crim.P. 14(a). "The severance decision under Rule 14 is generally left to

the sound discretion of the trial judge and will not be reversed absent a showing of abuse of that discretion." *Bibby*, 752 F.2d at 1123.

In the present motion, Defendant appears to argue that Counts III and IV constitute distinct felonies, not provable by the same evidence as the firearm and ammunition charges, and thus, introduction of evidence regarding wiretapping and witness intimidation would result in unfair prejudice. An examination of the facts, however, reveals that all of the counts are factually connected. The Count IV witness tampering charge is clearly factually connected to the Count I firearms charge, in that the Government alleges that Defendant intimidated witness Lisa Kellum into claiming ownership of the disputed gun. Likewise, the Count III wiretapping charge relies on tapes of conversations with Kellum seized during the same search which turned up the gun and ammunition.[11] Finally, all of the charges require proofs of the relationship between Defendant and Kellum, in that the Government expects to elicit testimony to the effect that Kellum played a role in bringing the gun and ammunition into Defendant's residence. In sum, the Court finds that severance would require two trials with largely identical proofs, and thus Defendant's motion for severance lacks merit.

## IV. CONCLUSION

For all of the aforementioned reasons:

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss for violations of the IAD is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Consolidate Counts for Multiplicity and Sever Counts for Improper Joinder is DENIED.

---

11. The Government also expects to introduce evidence of Defendant's taping of conversations with Lisa Kellum to support the witness intimidation charge.