UNITED STATES of America,
Plaintiff,

v.

William Luke CARNES, Defendant.

No. 97–CR–80053.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 19, 2000.

Sheldon Light, Asst. U.S. Atty., Detroit, MI, for Plaintiff.

Richard Amberg, Waterford, MI, for Defendant.

### OPINION AND ORDER DENYING DEFENDANT'S MOTIONS FOR NEW TRIAL AND TO DISMISS FOR LACK OF JURISDICTION AND REGARDING VARIOUS SENTENCING ISSUES

ROSEN, District Judge.

### I. INTRODUCTION

On July 2, 1999, following a jury trial at which he represented himself but was as-

sisted by standby counsel, Defendant William Luke Carnes was convicted on all four counts set forth in the superseding indictment, including (1) possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g); (2) possessing ammunition as a felon, also in violation of 18 U.S.C. § 922(g); (3) illegal wiretapping, in violation of 18 U.S.C. § 2511(1); and (4) witness tampering, in violation of 18 U.S.C. § 1512(b)(1). On July 7, 1999, Defendant, through his standby counsel, brought a motion for new trial, arguing that the evidence at trial revealed that the Government had tampered with a key witness, Lisa Kellum. Next, on August 9, 1999, Defendant himself filed a motion to dismiss the charges against him, arguing that the Government had exceeded its "territorial jurisdiction" by prosecuting him for conduct occurring outside the exclusive jurisdiction of the federal government.

In addition, the Court has conducted three sentencing hearings in this case, on May 11, 2000, May 23, 2000, and September 7, 2000. At these hearings, and in objections filed to the Presentence Investigation Report ("PSIR"), Defendant and his standby counsel raised several sentencing issues, including: (1) that Defendant's sentence has been improperly enhanced under § 3C1.1 of the U.S. Sentencing Guidelines; (2) that Defendant's prior state-court convictions for breaking and entering an occupied dwelling do not constitute "violent felonies" within the meaning of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e); (3) that two of Defendant's prior breaking-and-entering offenses arose from a single sequence of events occurring on the same day, April 3, 1991, and thus were not committed on "different occasions" within the meaning of § 924(e); and (4) that Defendant had his civil rights restored under Michigan law with respect to his 1983 breaking-and-entering conviction, so that this conviction cannot be included among the "three previous convictions" required to trigger the application of § 924(e).

Having reviewed Defendant's motions, briefs, and numerous cited authorities, as well as the Government's responses and the relevant testimony at trial, and having considered the arguments of counsel and of Defendant himself at the sentencing hearings, the Court is now prepared to rule on Defendant's motions and sentencing issues. This Opinion and Order sets forth the Court's rulings.

## II. *ANALYSIS*

### A. Defendant's Motion for New Trial

 In his first motion, brought through his standby counsel, Defendant argues that he should be granted a new trial because his defense was prejudiced by the Government's alleged tampering with a key witness, Lisa Kellum. In support of this motion, Defendant notes that Ms. Kellum initially provided a statement to an investigator with the Federal Defender's Office, Beverly Knox, claiming ownership of a firearm that formed the basis for the felon-in-possession charge against Defendant. At trial, however, Ms. Kellum recanted this statement, and instead testified that the gun in question actually belonged to Defendant. In his motion for new trial, Defendant contends that Ms. Kellum changed her testimony in response to threats from ATF agents that she faced imprisonment and the loss of custody of her children if she persisted in claiming ownership of the gun.

The fatal flaw in Defendant's motion, however, is that its factual premise is utterly contrary to the testimony at trial. In his examination of both Ms. Kellum and ATF agent Alan Jakubowski, Defendant sought to elicit testimony that Ms. Kellum had changed her testimony as a result of Government threats and coercion. Both of these witnesses, however, unequivocally rejected this allegation of Government intimidation. In recounting her meeting with Agent Jakubowski, Ms. Kellum testified that the ATF agent's statements to her were "not threatening

at all," that she "never felt threatened," and that she "wasn't threatened or intimidated" into disavowing her initial assertion of gun ownership. (6/29/99 Tr. at 30–31.) She further testified that she changed her statement of her "own free will," based on her realization that she had "made a mistake" and "done something very foolish," as well as her desire to do "the right thing." (*Id.*)

For his part, Agent Jakubowski flatly denied on cross-examination that he had threatened Ms. Kellum or suggested that her custody of her children could be jeopardized if she adhered to her claim of gun ownership. (6/25/99 Tr. at 188–89.) Instead, he testified that he "informed her that it's important to tell the truth and be honest." (*Id.* at 188.) In short, despite Defendant's vigorous cross-examination, and his affirmative efforts to obtain testimony in support of his theory of Government tampering with witnesses, nothing in the record lends any support to Defendant's claim that Ms. Kellum changed her testimony as a result of Government coercion.[1]

Indeed, Ms. Kellum not only denied any Government threats or intimidation, but she affirmatively testified that Defendant himself had influenced her initial statement by contacting her and encouraging and approving her claim of gun ownership. (*Id.* at 200.) Ms. Kellum also testified that, during a visit with Defendant after he was arrested and taken into custody, Defendant showed her a drawing of the gun in question and expressly encouraged her to say that it belonged to her. (*Id.* at 215.) Based on this testimony, Defendant was convicted of witness tampering.

Thus, in order to accept the factual premise underlying Defendant's motion, the Court would not only have to overlook the absence of any testimony supporting Defendant's allegation of Government witness tampering, but also would have to disregard the contrary evidence, as accepted by the jury, that *Defendant* tampered with a witness by persuading Ms. Kellum to make her initial claim of gun ownership. Indeed, Defendant effectively invites the Court to upset two separate determinations by the jury: namely, that Defendant—and, thus, not Ms. Kellum—possessed the firearm in question, and that Defendant improperly sought to influence Ms. Kellum to state that the gun was hers. Yet, this Court should exercise its discretion to overturn a jury verdict and award a new trial "only in the extraordinary circumstances where the evidence preponderates heavily against the verdict." *United States v. Pierce*, 62 F.3d 818, 825 (6th Cir.1995). Moreover, a jury verdict cannot be overturned based on differing assessments of the credibility of witnesses, as the jury is entitled to "special deference" in its "resolution of questions of credibility." *United States v. Latouf*, 132 F.3d 320, 331 (6th Cir.1997).

In this case, ample evidence—indeed, all of the relevant testimony—supports the jury's findings. In order to reject these findings and conclude that the Government improperly tampered with witness Lisa Kellum, the Court would have to disregard the jury's assessment of the credibility of Ms. Kellum and Agent Jakubowski, both of whom testified that Ms. Kellum freely elected, without threats or unlawful coercion, to recant her initial statement and instead testify that the gun in question belonged to Defendant. Because there is no basis in the record for upsetting the jury's findings, nor for concluding that the Government improperly influenced Ms. Kellum's testimony, the Court must deny Defendant's request for a new trial.

**B. Defendant's Motion to Dismiss for Lack of Territorial Jurisdiction**

▮ In his second motion, brought by Defendant himself, Defendant argues that

---

1. The Court further notes that, at the request of Defendant, the Court itself closely questioned Agent Jakubowski on the record, but outside the presence of the jury, concerning his meetings with Ms. Kellum. This additional questioning satisfied the Court that there was no improper conduct.

the federal government and this Court lack "territorial jurisdiction" over this case, absent a showing that the conduct leading to his conviction occurred at geographical locations under the exclusive control of the federal government. In support of this argument, Defendant relies principally on *United States v. Lopez*, 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995), in which the Supreme Court struck down the Gun–Free School Zones Act of 1990 as exceeding the authority of Congress to regulate interstate commerce.

There are two problems with Defendant's argument. First, nothing in *Lopez*, or in any other decision of which this Court is aware, limits the Government to prosecuting only those offenses that occur within the "exclusive territorial jurisdiction" of the United States, whatever that might be. Rather, under the U.S. Constitution, the federal government may regulate conduct occurring anywhere in the fifty states, including the State of Michigan, so long as it sufficiently implicates one of the national government's enumerated powers, such as the power over interstate commerce. Thus, it does not matter that Defendant's conduct occurred in the State of Michigan, rather than some zone of exclusively federal "territorial" jurisdiction, because the state and federal governments both have the power to regulate certain forms of conduct occurring within this state.

This leads to the question whether the conduct at issue in the present case may be reached, and prohibited, through the exercise of one of the federal government's enumerated powers. Apparently, Defendant views *Lopez* as suggesting that it may not. Yet, as the Sixth Circuit has expressly recognized, the federal felon-in-possession statute passes constitutional muster

notwithstanding the decision in *Lopez*, because 18 U.S.C. § 922(g)(1), unlike the statute at issue in *Lopez*, includes an express requirement that the felon's firearm possession must be "in or affecting commerce." *See United States v. Chesney*, 86 F.3d 564, 568 (6th Cir.1996) (noting that "[c]ourts uniformly have rejected facial challenges to § 922(g)(1)" made in light of *Lopez*), *cert. denied*, 520 U.S. 1282, 117 S.Ct. 2470, 138 L.Ed.2d 225 (1997); *United States v. Turner*, 77 F.3d 887, 889 (6th Cir.1996) ("Every court of appeals that has been faced with this question since *Lopez* has held that the jurisdictional element of § 922(g) provides the requisite nexus with interstate commerce that [the statute at issue in *Lopez*] lacked."). Therefore, because the jury was properly instructed, and then proceeded to find, that Defendant could be convicted under § 922(g)(1) only if his possession of a firearm and ammunition had some connection to interstate commerce, Defendant's prosecution and conviction for violating § 922(g)(1) did not exceed the jurisdiction of the federal government or its courts.

■ Similarly, the other two federal statutes under which Defendant was convicted do not suffer from the infirmity identified in *Lopez*. First, the federal wiretapping statute, 18 U.S.C. § 2511(1), clearly passes the interstate commerce standard set forth in *Lopez* because, as recognized by one court, telecommunications are both channels and instrumentalities of interstate commerce, and thus bear a substantial relationship to interstate commerce even where the communications in question occur solely within the boundaries of a single state. *See Spetalieri v. Kavanaugh*, 36 F.Supp.2d 92, 115–16 (N.D.N.Y.1998).[2] Next, the federal

---

**2.** At the September 7, 2000 sentencing hearing, Defendant cited two cases, *United States v. Smith*, 182 F.3d 452 (6th Cir.1999), and *United States v. Collins*, 40 F.3d 95 (5th Cir. 1994), as purportedly calling into question the constitutionality of his prosecution and conviction under federal wiretapping law. These

cases, however, addressed robberies prosecuted under the federal Hobbs Act, 18 U.S.C. § 1951, and not illegal wiretapping. Thus, these decisions do not in any way undermine the Court's ruling that wiretapping implicates the channels and instrumentalities of inter-

government plainly did not exceed its powers in enacting the statute outlawing witness tampering, 18 U.S.C. § 1512(b), or in enforcing § 1512(b) in this case, as this statute serves to ensure the integrity of proceedings before the federal courts, a concern uniquely within the province of the federal government.[3] Consequently, the Court rejects Defendant's jurisdictional challenge to his prosecution and conviction.

## C. Defendant's Sentence Is Subject to Enhancement under § 3C1.1 of the Sentencing Guidelines.

■ The Court turns next to the several sentencing issues raised by Defendant and his standby counsel in their objections to the PSIR and at the sentencing hearings. Defendant first challenges the application of § 3C.1.1 of the Sentencing Guidelines to enhance his sentence by two levels, arguing that this constitutes impermissible "double counting" of the same conduct for two different sentencing purposes. The Court cannot agree.

In calculating Defendant's recommended sentence, the PSIR groups counts one (felon in possession of firearm), two (felon in possession of ammunition), and four (witness tampering). As a result, the PSIR assigns a base offense level of 20 for the conviction on count one, and assesses a two-level enhancement for tampering with a witness to the underlying felon-in-possession offenses. This two-level enhancement derives from § 3C1.1 of the Sentencing Guidelines, entitled "Obstructing or Impeding the Administration of Justice." Note 4(a) to this Guideline confirms that

witness tampering provides an appropriate basis for applying the enhancement. Further, Note 8 provides:

> If the defendant is convicted both of an obstruction offense ... and an underlying offense (the offense with respect to which the obstructive conduct occurred), the count for the obstruction offense will be grouped with the count for the underlying offense.... The offense level for that group of closely related counts will be the offense level for the underlying offense increased by the 2–level adjustment specified by this section, or the offense level for the obstruction offense, whichever is greater.

U.S.S.G. § 3C1.1, Appl. Note 8. Thus, the Government argues, and the Court agrees, that the Sentencing Guidelines expressly call for the offense-level calculation and two-level enhancement set forth in Defendant's PSIR.[4]

Moreover, the Government contends, and the Court again agrees, that there is no "double counting" here of the sort identified by the Sixth Circuit in *United States v. Farrow,* 198 F.3d 179, 188–95 (6th Cir. 1999). Defendant's obstructive conduct did not figure at all in the calculation of the base offense level of 20 for the felon-in-possession conviction. Rather, this conduct was taken into account only as the basis for the two-level enhancement under § 3C1.1. Thus, the PSIR does not look to "the same aspect of [Defendant's] conduct for two sentencing purposes." 198 F.3d at 195.

Indeed, as the Government points out, the prosecution should not be placed in a

---

state commerce, even when wholly intrastate communications are intercepted.

**3.** Indeed, to the extent Defendant argues that there is some sort of inherent "territorial" limit to the Government's prosecutorial powers, it should be noted that the federal witness tampering statute expressly confers "extraterritorial Federal jurisdiction over an offense under" that statute, 18 U.S.C. § 1512(g), in apparent recognition that such conduct could threaten the integrity of federal judicial pro-

ceedings no matter where the witness tampering might occur.

**4.** The Government further notes that this § 3C1.1 issue is moot if the Court determines that Defendant is subject to sentencing as a career criminal under the ACCA. In that event, a base offense level of 33 would apply, and not the lower base offense level of 20 for the felon-in-possession offense. The applicability of the ACCA is considered below.

worse position for having charged and convicted Defendant of witness tampering, under the stringent "beyond a reasonable doubt" standard applicable at trial, than it would have been in had it not pursued this charge and instead simply argued at sentencing, under the more lenient "preponderance" standard applicable to sentencing determinations, that Defendant had tampered with a witness. In either case, so long as the obstructive conduct is not used to determine the underlying offense level (as it was not here), the § 3C1.1 two-level enhancement may properly be applied. Consequently, Defendant's sentence does not raise any concerns of double counting.

### D. Defendant's State–Court Breaking-and–Entering Convictions Constitute "Violent Felonies" under the ACCA.

■ Defendant's next three challenges involve the PSIR's recommendation that he be sentenced as a career offender under the ACCA. This statute provides, in relevant part:

> In the case of a person who violates [the federal felon-in-possession statute] and has three previous convictions by any court ... for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years....

18 U.S.C. § 924(e)(1). Defendant's various objections to his proposed sentence implicate several portions this statute, beginning with its requirement that each of his relevant prior convictions be for "a violent felony."

However, as the Government points out, the Sixth Circuit has expressly held that the Michigan state-law offenses of breaking and entering an occupied dwelling and attempted breaking and entering an occupied dwelling qualify as "violent felonies" under the ACCA. *United States v. Fish*, 928 F.2d 185, 186–88 (6th Cir.), *cert. denied*, 502 U.S. 834, 112 S.Ct. 115, 116

L.Ed.2d 84 (1991); *see also United States v. Johnson*, 22 F.3d 674, 683 (6th Cir.1994). Thus, Defendant's three prior Michigan breaking-and-entering convictions may be treated as "violent felonies" for purposes of determining whether the ACCA should apply here.

### E. Defendant's Two State–Court Convictions Arising from the Events of a Single Day Count as Two Separate Convictions under the ACCA.

■ The next sentencing issue raised by Defendant is whether his two 1991 breaking-and-entering convictions, both arising from the events of a single day, should count as one or two offenses for purposes of the ACCA. Defendant was charged with two separate offenses in two separate informations, and he pled guilty to both of these offenses. (*See* Government's 5/17/00 Sentencing Memorandum, Exs. 1, 2.) He contends, however, that the offenses in question were not "committed on occasions different from one another," 18 U.S.C. § 924(e)(1), and therefore should count as only a single conviction under the ACCA. Although the question is a close one in light of the fine distinctions made in the case law, the Court finds that Defendant's argument is defeated by the most similar, and hence most controlling, Sixth Circuit precedents.

The charges leading to Defendant's two 1991 breaking-and-entering convictions both arose from conduct occurring on a single day, April 3, 1991, when Defendant broke into two different dwellings in Troy, Michigan (2834 Marcus and 2849 Borden). According to the District Court's findings at the preliminary examination held on April 11, 1991, these two residences were adjacent to each other, and shared a common backyard area. (*See* Defendant's 5/18/00 Sentencing Br., Ex. 1, 4/11/91 Preliminary Examination Tr. at 31.) Defendant had broken first into one dwelling and then into the adjacent residence, and was in the process of escaping through the back yard when an occupant of the first

residence, Mr. Subonj, went outside, shouted that he had been robbed (thereby awakening his neighbor, Mr. Rabah), and observed Defendant wearing a ski mask and attempting to escape through the back yard. Mr. Subonj, his son, and Mr. Rabah together subdued Defendant, and items stolen from both houses were recovered in the common backyard area.

The Sixth Circuit has issued several decisions addressing the "different occasions" element of 18 U.S.C. § 924(e)(1). Unfortunately, these cases are not easily harmonized. First, in *United States v. Brady*, 988 F.2d 664 (6th Cir.), *cert. denied*, 510 U.S. 857, 114 S.Ct. 166, 126 L.Ed.2d 126 (1993), the *en banc* Sixth Circuit held that the defendant's two prior robbery convictions counted as two "distinct criminal episodes" for purposes of the ACCA. Brady had committed his first armed robbery at 9:30 p.m. at a beauty shop, and then, less than an hour later, had committed a second armed robbery at the nearby Club Continental Bar. Brady argued that these two offenses were part of a "single, continuous crime spree rather than two separate offenses," pointing to the close proximity in time between the two robberies. 988 F.2d at 668. The Court disagreed, stating that "mere proximity in time between two offenses occurring at different places and involving different victims" did not operate to merge the two offenses. 988 F.2d at 668. Rather, the Sixth Circuit held:

> [W]e believe that offenses committed by a defendant at different times and places and against different victims, although committed within less than an hour of each other, are separate and distinct criminal episodes and that convictions for those crimes should be

counted as separate predicate convictions under § 924(e)(1). As discussed earlier, while defendant Brady sat at the Club Continental Bar with his concealed shotgun, he could have decided that the one robbery he had committed was enough for the evening. Instead, he decided to rob again, and, after robbing the patrons of the bar, he shot one female patron in the leg. Thus, seen from either an objective or subjective point of view, defendant Brady's crimes were separate episodes. Thus, he was properly taxed with both at his sentencing.

988 F.2d at 669–70.[5]

Similarly, in *United States v. Wilson*, 27 F.3d 1126, 1131 (6th Cir.), *cert. denied*, 513 U.S. 976, 115 S.Ct. 452, 130 L.Ed.2d 361 (1994), the Sixth Circuit held that the defendant's two criminal sexual conduct offenses occurred on "different occasions," where the two offenses occurred on the same date and in the same building, but were committed against separate victims and on separate floors and locations within the house. The Court stated:

> In the case at bar, defendant's conviction is similar to the one at issue in *Brady*. Defendant could have halted his criminal rampage at any time. Yet, he chose to continue selecting different victims in separate places. There seems to be no real reason for distinguishing between the events happening in separate rooms on separate floors of the same house versus separate, but nearby, structures as were the facts in *Brady*.

27 F.3d at 1131.

In two other cases, however, the Sixth Circuit reached the opposite conclusion.

---

5. In so ruling, the Sixth Circuit cited with approval the Tenth Circuit's decision in *United States v. Tisdale*, 921 F.2d 1095, 1099 (10th Cir.1990), *cert. denied*, 502 U.S. 986, 112 S.Ct. 596, 116 L.Ed.2d 619 (1991), in which the Court found that three burglaries committed at different stores within the same shopping mall during a single evening were separate criminal episodes, because "[a]fter each burglary, the defendant was free to desist and leave." *Brady*, 988 F.2d at 668 (discussing *Tisdale*, 921 F.2d at 1099); *see also United States v. Hudspeth*, 42 F.3d 1015, 1018–22 (7th Cir.1994) (*en banc*) (citing *Tisdale* with approval in holding that the defendant's burglaries of three stores in a strip mall within a 35–minute period were crimes "committed on occasions different from one another" under § 924(e)), *cert. denied*, 515 U.S. 1105, 115 S.Ct. 2252, 132 L.Ed.2d 260 (1995).

First, in its most recent treatment of this issue, *United States v. Thomas*, 211 F.3d 316 (6th Cir.2000), the Court found only a single episode of criminal conduct, where two women in a car asked the defendant and an accomplice for directions and agreed to give the two men a ride, and where each of the men ultimately raped both the driver and the passenger before fleeing upon spotting a police car. The Court held that the defendant's first rape had not fully "concluded" before he began raping the second woman:

> In the case before us today, it is the absence of a completion or definable endpoint of the first crime before the second crime was begun that distinguishes this case from *Brady* and *Wilson* .... [I]n this case the sexual assault started when both men entered the women's vehicle and did not end until both men exited the vehicle when they thought they had seen a police car. It is not sufficient to argue, as the government has argued in this case, that the rapes were necessarily sequential because it was physically impossible for Thomas to rape two women at one time.... Thomas and [his accomplice] asserted dominion and control over both women at the same time. They kept both women under their control throughout the duration of this incident. There was no conclusion of Thomas' criminal activity against the first woman when he began raping the second woman. With the assistance of his accomplice, Thomas carried out his aggressions against the two women simultaneously.

211 F.3d at 321. The Sixth Circuit reached this conclusion despite the fact that the defendant raped the two women in two different places, with Thomas forcing the women to drive to a different location before he commenced his assault on the second woman.[6]

Similarly, in *United States v. Murphy*, 107 F.3d 1199, 1208–10 (6th Cir.1997), the Court found that the defendant had "engaged in only one criminal episode in this case, despite the robbery of two separate residences," where the two residences were part of a single duplex, and where the defendant had remained behind at the first residence to prevent the occupant from calling the police while his two accomplices proceeded to rob the second residence. Because the defendant was "only guilty of the second burglary as an aider and abettor," and he had "never left the first location," the Court held that he had not successfully completed the first burglary, and that there was not a "definable endpoint to the first event" as necessary to find two distinct criminal episodes. 107 F.3d at 1210. The Court further observed that the result could not turn on the existence of two separate victims, as § 924(e) requires "different occasions," and thus turns upon the identification of "some reasoned basis for considering criminal conduct to be a definable event." 107 F.3d at 1210.[7]

---

**6.** This act of traveling to a second location seemingly provided the "definable endpoint" that the *Thomas* Court found lacking. Yet, as noted, the Sixth Circuit held otherwise, viewing the defendant as exercising "dominion and control over both women" throughout the entire period. It appears to this Court, however, that this reasoning operates to favor defendants who act in gangs against multiple victims, since, in such cases, the perpetrator can rely on his accomplices to control the remaining victims while he commits his offenses against each one in succession. Even with a single defendant and multiple victims, the perpetrator can argue that his offenses were interwoven and ongoing, with none having been completed before he moved on to the next victim. This Court fails to see why such a defendant should not be held separately accountable for each distinct decision to broaden the scope of his criminal activity to reach yet another victim.

**7.** In his dissent, Judge Norris suggested that the relevant test should be whether the second offense was "a reasonable extension of the first offense," or whether it "was merely the result of defendant's desire for further illicit gain." 107 F.3d at 1212 (Norris, J., dissenting).

Returning to the present case, the Court finds it more analogous to *Brady* and *Wilson* than to *Thomas* and *Murphy*. Defendant's two breaking-and-entering offenses involved two separate residences and two different victims and occurred at two distinct points in time. Although the two offenses were closely proximate in time and the residences were nearby, there was an identifiable and definite point in time at which Defendant had completed his invasion of the first residence but had not yet moved on to the next dwelling. At that point, he had the opportunity to decide whether to conclude his criminal venture with the robbery of a single residence, or whether to commit another offense against a different residence and a second victim. Under *Brady* and *Wilson*, mere proximity in time or location is insufficient to merge two offenses, so long as there is a basis for finding that one offense had concluded before the next one began. Here, there is such a basis for distinguishing Defendant's two offenses, which involved two separate (albeit nearby) residences and occurred at two different (albeit closely proximate) times.

Defendant, however, argues that he never "successfully concluded" the first breaking-and-entering offense, as he was apprehended in the common backyard of the two dwellings. This argument misses the mark, on at least two grounds. First, there is no statutory requirement of "successful completion," only "different occasions." Thus, for example, if a defendant commits two offenses at two different places and times but is apprehended upon returning to the scene of the first offense, he cannot appeal to this "lack of success" as a way of "reopening" the first offense and merging his two crimes. Under the plain language of the statute, the determination whether to apply § 924(e) cannot turn on whether (or where) the defendant was ultimately apprehended, but must in-

stead depend on whether his multiple offenses involves multiple acts, with a distinct opportunity to "call it a day" before engaging in the next such act. As the *en banc* Seventh Circuit has explained:

> The ACCA is directed at criminals who make a career out of criminal activity. A defendant who has the opportunity to cease and desist or withdraw from his criminal activity at any time, but who chooses to commit additional crimes, deserves harsher punishment than the criminal who commits multiple crimes simultaneously. An individual who commits simultaneous crimes (one single criminal action directed against a number of individuals) . . . has no opportunity to turn back and abandon his criminal conduct—the crime is completed with the single utterance of "stick 'em up." The same is true of an individual who violates multiple criminal statutes by a single act. In contrast, a defendant who commits sequential crimes has the opportunity at each and every turn to withdraw from his criminal activity.

*Hudspeth, supra,* 42 F.3d at 1021 (citation and footnote omitted). Defendant clearly had such an opportunity here.

Second, even assuming "successful completion" is relevant to the § 924(e) inquiry, it cannot safely be presumed that Defendant could not have successfully escaped the crime scene if he had elected to stop after robbing the first dwelling. To the contrary, it appears that the residents of the first house were able to catch Defendant only because he elected to remain in the vicinity and commit a second offense. It is this distinct decision to select a second dwelling and break into it that warrants treatment of Defendant's two 1991 offenses as having been committed on "different occasions" under § 924(e).[8]

8. The Court has reviewed the additional citations provided by Defendant following the May 23, 2000 sentencing hearing, and has found nothing in them that might alter this

conclusion. In fact, many of the decisions cited by Defendant predate the "different occasions" language of § 924(e), which was introduced into the statute in 1988.

### F. Because Defendant's Civil Rights and Firearm Privileges Had Not Been Fully Restored at the Time of His Federal Offenses, His State–Court Convictions Count Toward the Three Prior Convictions Required to Trigger Application of § 924(e).

As his next challenge to the sentencing recommendations contained in the PSIR, Defendant contends that one or more of his state-court convictions should not count toward the requisite "three previous convictions" needed to trigger the mandatory minimum 15–year sentence called for under the ACCA. In particular, Defendant argues that his state-court convictions are excluded from consideration under § 924(e) in light of a definition found in a related provision of federal firearm law, 18 U.S.C. § 921(a)(20). This latter statute exempts from consideration, at least for certain purposes, those convictions for which a person has had civil rights restored under the state law of the prosecuting jurisdiction:

> What constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held. Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C. § 921(a)(20).

■ Initially, the Government questions whether this definitional provision has any application where Defendant's prior state-

court convictions are being considered, not for the purpose of determining whether he is subject to prosecution as a felon-in-possession under § 922(g), but for the different purpose of determining whether he is subject to sentencing as a career offender under § 924(e). This argument, however, quickly runs afoul of the plain language of § 921(a), which provides that its definitions apply throughout "this chapter," including § 924(e). Thus, the § 921(a)(20) definition of a "crime punishable by imprisonment for a term exceeding one year," with its language addressing state-law restoration of civil rights and the like, expressly applies to the use of that phrase in § 924(e)(2)(B) as part of the latter statute's definition of a "violent felony." [9] Moreover, although Defendant cites a variety of cases that address, more or less tangentially, the applicability of § 921(a)(20) to the § 924(e) "three previous convictions" inquiry, one need look no further than *Caron v. United States*, 524 U.S. 308, 118 S.Ct. 2007, 2010–11, 141 L.Ed.2d 303 (1998), in which the Supreme Court expressly observed that § 921(a)(20) applies to the prior-felony inquiries under both § 922(g) and § 924(e) alike. *See also Custis v. United States*, 511 U.S. 485, 491, 114 S.Ct. 1732, 1736, 128 L.Ed.2d 517 (1994) ("At least for prior violent felonies, § 921(a)(20) describes the circumstances in which a prior conviction may be counted for sentencing purposes under § 924(e).").

■ Turning, then, to the merits of Defendant's appeal to § 921(a)(20) as a basis for disregarding some or all of his prior state-court convictions, this Court recently addressed this statute at length in *United States v. Brown*, 69 F.Supp.2d 925, 934–44 (E.D.Mich.1999). As observed in that

---

9. Specifically, this latter statute provides, in relevant part:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year ... that—
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another....

18 U.S.C. § 924(e)(2)(B). By including the phrase "crime punishable by imprisonment for a term exceeding one year," this provision incorporates by reference the definition of this phrase found at § 921(a)(20).

case, § 921(a)(20) calls for two separate inquiries. First, the Court must determine, under the law of the prosecuting jurisdiction, whether a given conviction has been expunged or set aside, or whether the defendant was pardoned or had his civil rights restored at some point after serving his sentence. If so, the Court then must consider whether, notwithstanding this pardon, expungement, or restoration of civil rights, the law of the prosecuting jurisdiction nevertheless continues to restrict the former felon's firearm privileges. *See Brown,* 69 F.Supp.2d at 935–39.

■ With regard to the first step of this inquiry, the governing Michigan law is now settled. Previously, in *United States v. Driscoll,* 970 F.2d 1472, 1478 (6th Cir. 1992), the Sixth Circuit had surveyed Michigan law and concluded that it did not fully restore a convicted felon's civil rights, because the former felon's right to sit on a jury remained subject to restrictions. However, the Michigan Court of Appeals subsequently rejected the decision in *Driscoll,* and held that a former felon's right to serve as a juror is restored once he is no longer "under sentence for a felony." *See Froede v. Holland Ladder & Mfg. Co.,* 207 Mich.App. 127, 523 N.W.2d 849, 851–52 (1994) (citing Mich.Comp.Laws § 600.1307a(1)(e)). As this Court anticipated in *Brown,* 69 F.Supp.2d at 937–38, the Sixth Circuit recently acknowledged that *Froede* controls over *Driscoll* on this question of Michigan law. *See Hampton v. United States,* 191 F.3d 695, 699–702 (6th Cir.1999).

In short, it is now recognized that "Michigan restores a felon's right to sit on a jury upon completion of his sentence." *Hampton,* 191 F.3d at 702. A felon's sentence is deemed "completed" when all portions of it have been served, including incarceration, parole, and probation. *See Froede,* 523 N.W.2d at 852 (finding that

the challenged juror in that case was not disqualified from jury service because she had been "released from parole" several months before being selected as a juror); *United States v. Bolton,* 32 F.Supp.2d 461, 465 (S.D.Tex.1999) (following *Froede,* and concluding that "Michigan law provides for the automatic reinstatement of all civil rights of convicted felons following release from custody and completion of probation").

With regard to Defendant's two most recent state-court convictions, stemming from his two breaking-and-entering offenses committed in 1991, this state-law restoration of the right to sit on a jury is unavailing. According to the PSIR, Defendant was incarcerated for these offenses until November 2, 1994, when he was released to electronic monitoring. On January 5, 1996, the Michigan Department of Corrections placed Defendant on a 24–month period of parole, due to expire on January 5, 1998. In 1997, while still on parole, Defendant committed the offenses of which he stands convicted in this case. Consequently, because Defendant had not yet completed his sentence with respect to his two 1991 offenses, Michigan law had not yet restored his right to sit on a jury following these two convictions. This being so, the Court need not reach the second part of the § 921(a)(20) inquiry with respect to these 1991 convictions, and these two convictions may be counted toward the three previous convictions required for sentencing as a career offender under § 924(e).

■ For the last of these three prior convictions, the Government points to a breaking-and-entering offense committed by Defendant in February of 1983. On May 2, 1983, Defendant was sentenced by a Michigan court to 90 days of imprisonment and a two-year term of probation for this offense.[10] The record does not indi-

10. At the September 7, 2000 sentencing hearing, Defendant sought, for the first time, to challenge the constitutionality and factual basis of this 1983 conviction. Specifically, he

claimed that his guilty plea in that case was not knowing and intelligent, that he was not adequately advised of the rights he was waiving, and that the record suggests that the

breaking and entering offense involved a hotel and not an "occupied dwelling." Defendant also alleged that the record fails to affirmatively establish that he was represented by counsel. As to this last point, however, Defendant's standby counsel stated at the hearing that he had reviewed the state court records of the 1983 conviction, and that these records identify a particular attorney as having represented Defendant in that case. Tellingly, Defendant himself, who is in the best position to attest to the circumstances surrounding his 1983 conviction, failed to contradict these facts disclosed to the Court by his standby counsel. *Cf. Parke v. Raley*, 506 U.S. 20, 32, 113 S.Ct. 517, 524, 121 L.Ed.2d 391 (1992) (finding it reasonable to place upon the defendant the burden of proving the invalidity of a prior conviction based on a guilty plea, because, among other reasons, "the defendant may be the only witness who was actually present at the earlier proceeding").

The remainder of Defendant's collateral attacks on his 1983 conviction, even if factually supportable, are not legally cognizable in the present sentencing proceeding. Under *Custis, supra*, 511 U.S. at 497, 114 S.Ct. at 1739, a case also involving an enhanced sentence under § 924(e), a defendant may not "use the federal sentencing forum to gain review of his state convictions." *See also Taylor v. United States*, 495 U.S. 575, 600, 110 S.Ct. 2143, 2159, 109 L.Ed.2d 607 (1990) (noting that, under the plain language of § 924(e), a sentencing court should "look only to the fact that the defendant [was] convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions"); *United States v. Houston*, 187 F.3d 593, 594 (6th Cir.1999); *Turner v. United States*, 183 F.3d 474, 477 (6th Cir.1999). The sole exception to this rule is for challenges based on denials of the right, under *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), to have counsel appointed to represent the defendant in the prior state proceeding. *Custis*, 511 U.S. at 487, 496, 114 S.Ct. at 1734, 1738. As noted, the record discloses no such failure to appoint counsel here. The other questions raised by Defendant at sentencing—ineffective assistance of counsel, incomplete understanding of his rights, a guilty plea that was not knowing and intelligent, and lack of a factual basis for his plea—are collateral attacks of the precise sort that *Custis* precludes this Court from considering. Among other bases for its decision, the *Custis* Court reasoned:

> [F]ailure to appoint counsel at all will generally appear from the judgment roll itself, or from an accompanying minute order. But determination of claims of ineffective assistance of counsel, and failure to assure

that a guilty plea was voluntary, would require sentencing courts to rummage through frequently nonexistent or difficult to obtain state-court transcripts or records that may date from another era, and may come from any one of the 50 States.

*Custis*, 511 U.S. at 496, 114 S.Ct. at 1738–39. Defendant's challenges here pose many of these same practical difficulties, as his standby counsel discovered when attempting to investigate the circumstances surrounding the 1983 conviction.

More generally, the Court rejects Defendant's suggestion that the Government bears an onerous "burden of proof" with regard to his 1983 conviction. The Government has only the "modest" initial burden of establishing the existence of a prior conviction, and this requirement may be satisfied through an uncontroverted assertion in a PSIR, a copy of a state-court judgment, or "some other satisfactory proffer." *United States v. Cordero*, 42 F.3d 697, 701 (1st Cir.1994); *see also Hudspeth*, 42 F.3d at 1019 n. 6; *United States v. Redding*, 16 F.3d 298, 302 (8th Cir.1994); *United States v. Bregnard*, 951 F.2d 457, 460 (1st Cir.1991); *United States v. Ruo*, 943 F.2d 1274, 1276 (11th Cir.1991). The Government met this initial burden here by setting forth the fact and nature of the 1983 conviction in the PSIR. At this point, the burden shifted to Defendant to show why this conviction should not count toward a sentence enhancement under § 924(e). *See Hudspeth*, 42 F.3d at 1019 n. 6; *Cordero*, 42 F.3d at 701; *Ruo*, 943 F.2d at 1276; *cf. United States v. Cowart*, 90 F.3d 154, 159 (6th Cir.1996). Notably, in his written objections to the PSIR, Defendant did not contest the fact or nature of his 1983 conviction, but argued only that this conviction should be excluded from consideration under § 921(a)(20). At sentencing, Defendant did not present any affirmative evidence of any defects in his 1983 conviction, but rather pointed to the incomplete state-court record as permitting an inference of invalidity. Yet, the record is complete in the most relevant respects—as acknowledged by Defendant's standby counsel, it reflects that Defendant was convicted of breaking and entering following a guilty plea, and that he was represented by counsel. In light of these uncontested facts, silence as to other matters, such as the factual predicate for the conviction or Defendant's knowing waiver of his rights, does not aid Defendant in meeting his burden, because state court judgments are entitled to a "presumption of regularity" which Defendant must overcome through affirmative evidence. *See Parke*, 506 U.S. at 29–33, 113 S.Ct. at 523–25; *United States v. Butler*, 207 F.3d 839, 843 (6th Cir.2000); *Johnson, supra*, 22 F.3d at 683. Defendant has offered no such evidence, but instead "merely specu-

cate when Defendant began or finished serving the two portions of this 1983 sentence. However, it seems fair to assume that Defendant completed this sentence by some point in 1985, so that his rights to vote, to seek and hold public office, and to serve on a jury were restored by that time.

This leaves the second part of the inquiry: namely, whether this restoration of certain civil rights with respect to Defendant's 1983 state-court breaking-and-entering conviction was accompanied by some sort of restriction upon his firearm privileges, thereby triggering the "unless" clause of § 921(a)(20). As observed in *Brown,* the Supreme Court's *Caron* decision adopts an "all-or-nothing" construction of this "unless" clause, holding that even a limited state-law restriction on a former felon's firearm privileges is sufficient to trigger the clause and render a prior state-court conviction eligible for consideration under federal firearm law. *See Brown,* 69 F.Supp.2d at 938–41.

In *Brown,* this Court found just such a limited restriction in Mich.Comp.Laws § 28.426(1), which prohibits a convicted felon from applying for a license to "carry a pistol concealed on the person" or "to carry a pistol, whether concealed or otherwise, in a vehicle operated or occupied by the applicant" for a period of eight years following "convict[ion] of a felony or confine[ment] for a felony conviction." Although the defendant in *Brown* had regained some of his firearm privileges under Mich.Comp.Laws § 750.224f(1), this

Court held that the restrictions that remained under Mich.Comp.Laws § 28.426(1) rendered the defendant subject to prosecution under the federal felon-in-possession statute. *See Brown,* 69 F.Supp.2d at 939–44.

A similar state statutory scheme applies here, and leads to the same result. The firearm restrictions imposed under § 28.426(1) have long been a part of Michigan law, and were in place at the time of Defendant's 1983 breaking-and-entering conviction and at all times thereafter.[11] Under this statute, Defendant was not permitted to carry a pistol in a vehicle or concealed on his person for a period of eight years after his confinement for his 1983 offense. As noted earlier, the record does not indicate precisely when Defendant completed his sentence for this offense. Yet, even assuming he began serving his 90–day jail term immediately upon his arrest on February 28, 1983, and even assuming the eight-year period under § 28.426(1) should be construed as commencing immediately after this jail term ended (as opposed to after Defendant had also completed his two-year probationary period),[12] the statutory eight-year period would have expired on May 28, 1991. On April 3, 1991, before this eight-year period had fully run, Defendant was arrested for the two 1991 breaking-and-entering offenses discussed earlier. Thus, he failed to remain free of a felony conviction or confinement for the requisite eight-year period set forth in Mich.Comp.Laws

late[s] about theoretical possibilities" as to what defects might have been present in the 1983 proceedings. *Cordero,* 42 F.3d at 702. This is insufficient to defeat the use of the 1983 conviction in determining Defendant's sentence.

11. Mich.Comp.Laws § 28.426 was most recently amended in 1984, but this amendment did not change the language of subsection (1). This subsection was last amended in 1980, but none of the language of relevance here was affected in any way.

12. This construction is suggested by the Michigan statute itself, which speaks only of "confine[ment] for a felony conviction," and does

not refer to probation, parole, or other possible components of a criminal sentence. In contrast, Mich.Comp.Laws § 750.224f imposes three-and five-year restrictions upon a convicted felon's firearm privileges, commencing only after the felon has "served all terms of imprisonment," "paid all fines," and "successfully completed all conditions of probation or parole." The Court need not decide whether this difference in statutory language has legal significance, but will assume, for present purposes, that the eight-year waiting period under § 28.426(1) begins after the felon is released from prison.

§ 28.426(1), and his firearm privileges were never fully restored under Michigan law following his 1983 conviction. It follows that § 921(a)(20) does not exempt Defendant's 1983 breaking-and-entering conviction from consideration as one of the necessary "three previous convictions" under § 924(e).

■ Furthermore, unlike the defendant in *Brown*, it appears that Defendant here could not claim even a partial restoration of his firearm privileges following his 1983 conviction. In *Brown*, this Court found that the defendant's privileges were partially restored under Mich.Comp.Laws § 750.224f(1), which authorizes certain convicted felons to "possess, use, transport, sell, purchase, carry, ship, receive, [and] distribute" firearms, provided that at least three years have passed since the completion of their sentence. *See Brown*, 69 F.Supp.2d at 939. This three-year period, however, is expanded to five years in cases involving "specified felon[ies]," and the list of such felonies includes the offense of "breaking and entering an occupied dwelling." Mich.Comp.Laws §§ 750.224f(2), 750.224f(6)(v). Moreover, those who are convicted of such a "specified felony" must pursue the additional step of petitioning the "concealed weapons licensing board" in their county of residence for the restoration of firearm privileges. Mich.Comp.Laws §§ 750.224f(2)(b), 28.424(1); *see also United States v. Green*, 109 F.Supp.2d 688, 689–91 (E.D.Mich. 2000).

In this case, the longer five-year waiting period applies to Defendant's 1983 conviction for breaking and entering an occupied dwelling. Presumably, this waiting period expired at some point in 1990, five years after Defendant had served his 90–day jail term and his two years of probation. Yet, under the Michigan statute, the expiration of this five-year period alone does not suffice to automatically restore a former fel-

on's firearm privileges. Rather, an individual must specifically apply to his local concealed weapons licensing board to secure the restoration of these privileges. *See* Mich.Comp.Laws § 750.224f(2)(b); *Green*, 109 F.Supp.2d at 691. Nothing in the record indicates that Defendant applied for or was granted this restoration of his firearm privileges.

■ In his arguments at the sentencing hearings, and through the citations he has provided to the Court, Defendant appears to suggest that the application of § 750.224f(2) to his 1983 conviction would violate the Ex Post Facto clause of the U.S. Constitution, U.S. Const., art. I, § 9, cl. 3, because this Michigan law was not enacted until 1992, well after his 1983 conviction. As an initial matter, the Court notes that Judge O'Meara of this District recently rejected an identical challenge to the application of § 750.224f. *See Hervey v. United States*, 105 F.Supp.2d 731, 735 (E.D.Mich.2000). In so ruling, Judge O'Meara relied on a Michigan appellate decision holding that the primary purpose of the state statute was not to inflict further punishment, but rather to protect the public by prohibiting certain classes of convicted felons from possessing firearms. *See Hervey*, 105 F.Supp.2d at 735 (citing *People v. Tice*, 220 Mich.App. 47, 558 N.W.2d 245 (1996)).

In any event, even disregarding § 750.224f, the Michigan law as it stood prior to the 1992 enactment of this statute was by no means more favorable to Defendant. Rather, at the time of Defendant's 1983 conviction, Mich.Comp.Laws § 28.422(1) broadly prohibited the issuance of a license to "purchase, carry or transport a pistol" to any "person who has been convicted of a felony or confined therefor ... during the 8–year period immediately preceding" the date of application for this license.[13] As discussed earlier, Defendant

---

**13.** This statute was amended in 1986, but the quoted portion of it remained substantially unchanged. It was amended again in 1990,

with an effective date of March 28, 1991, to broadly prohibit the issuance of a license to anyone "convicted of a crime punishable by

committed additional breaking-and-entering offenses before the expiration of this eight-year period following his 1983 conviction and incarceration. Therefore, even assuming that the Court must confine its analysis to the Michigan law as it existed at the time of Defendant's 1983 conviction, Defendant nevertheless has failed to show that he ever satisfied the conditions set forth in the Michigan law of that time for restoration of a convicted felon's firearm privileges.

In sum, having surveyed the various judicial precedents and Michigan statutes bearing upon the restoration of a former felon's civil rights and firearm privileges, the Court finds that Defendant's 1983 breaking-and-entering conviction and his two 1991 breaking-and-entering convictions count as relevant "previous convictions" under 18 U.S.C. § 924(e). Because Defendant has three such prior convictions, he is subject to the 15-year minimum term of imprisonment set forth in § 924(e).

### G. Additional Sentencing Issues

Finally, in his written objections to the PSIR, Defendant raises a number of additional sentencing issues, apart from those resolved above. The Court will address each of these objections in turn.[14]

■ First, Defendant argues that the Government must elect between sentencing him under count one (felon in possession of firearm) or count two (felon in possession of ammunition), but not both. Defendant contends that these two counts are multiplicitous, and must be merged for purposes of sentencing. This Court previously has addressed this issue in this very case, ruling that the Government could separately prosecute Defendant for the two offenses charged in counts one and two. *See United States v. Carnes*, 41 F.Supp.2d 719, 724–25 (E.D.Mich.1999). In so holding, however, this Court relied on the Sixth Circuit's decision in *United States v. Throneburg*, 921 F.2d 654, 657 (6th Cir.1990), in which the Court of Appeals found that "the separate counts for the ammunition and the gun—counts which require other factual proofs—are appropriate separate units of prosecution for purposes of trial, *although they would merge for purposes of sentencing.*" (Emphasis added.)

*Throneburg*, then, seems to suggest that one of Defendant's two convictions should be vacated, and that he should be sentenced only on the remaining count. Other circuits have adopted this reading of *Throneburg*, at least in cases where multiple weapons or a firearm and ammunition were seized on the same day from a single location. *See, e.g., United States v. Dunford*, 148 F.3d 385, 388–90 (4th Cir.1998); *United States v. Hall*, 77 F.3d 398, 402 (11th Cir.1996) (noting that "[s]ubstantial precedent from other circuits supports the view that the simultaneous possession of a firearm and ammunition should be punished as one offense," and citing *Throneburg*, among other cases); *United States v. Berry*, 977 F.2d 915, 919 (5th Cir.1992). This case presents a close question because, as noted in this Court's earlier opinion, the firearm and ammunition were seized during a single search of a residence, but were discovered at different locations within the residence. *See*

imprisonment for more than 1 year," unless this conviction was expunged or set aside or the former felon was pardoned or had his civil rights restored in a manner which did not prohibit him from shipping, transporting, possessing, or receiving firearms. Finally, all such language was removed from the statute in 1992, and replaced with a reference to the newly-enacted § 750.224f.

14. The Court is troubled by the Government's failure to address these issues at the September 7 hearing, despite repeated invitations to do so. More generally, much of what follows is the product of the Court's own research or Defendant's sentencing memoranda, as the Government largely failed to produce substantive responses to Defendant's objections or, in those few instances where it did, provided analyses which were flawed in various respects.

*Carnes,* 41 F.Supp.2d at 725; *see also United States v. Hutching,* 75 F.3d 1453, 1460 (10th Cir.1996) (noting that more than one offense may be established where firearms and ammunition are "stored in different places or acquired at different times"). Nevertheless, in accordance with the weight of authority, the Court will vacate Defendant's conviction on count two, and sentence him only on count one.[15]

■ Next, Defendant mounts an additional challenge to the use of his two 1991 breaking-and-entering convictions in determining his criminal history, asserting that these two convictions were vacated when the state court instead sentenced him as a habitual offender under Mich.Comp.Laws § 769.10. This Michigan statute permits the courts to impose an enhanced sentence for a second felony conviction, where the defendant previously was convicted of a felony in Michigan or elsewhere. The state-court judgments in the two 1991 cases brought against Defendant indicate that he was sentenced, in both cases, under the "habitual offender" counts, and not under the breaking-and-entering counts. Moreover, these judgments state that the sentences for the breaking-and-entering counts were "vacated." From this, Defendant argues that the breaking-and-entering convictions themselves were "vacated," and cannot count toward the three prior convictions needed to invoke 18 U.S.C. § 924(e).

This contention is wholly without merit. By its terms, the Michigan habitual offender statute does not even apply in the absence of a conviction for a second or "subsequent felony." Mich.Comp.Laws § 769.10(1). Consequently, if, as Defendant argues, his underlying 1991 breaking-and-entering convictions were themselves vacated, there would be no "subsequent" felonies upon which a habitual-offender en-

hancement could be based. Worse yet, this would utterly derail the graduated punishment scheme enacted by the Michigan legislature, under which sentences may be further enhanced upon convictions for third and fourth felony offenses. *See* Mich.Comp.Laws §§ 769.11, 769.12. In addition, the Michigan courts have explained that the habitual offender laws create no separate substantive crimes, but only augment the punishment imposed for the underlying second or subsequent offense. *See People v. Bewersdorf,* 438 Mich. 55, 475 N.W.2d 231, 236 (1991); *People v. Conner,* 209 Mich.App. 419, 531 N.W.2d 734, 738 (1995). Thus, it is evident that the Michigan court vacated only the *sentences* for Defendant's two 1991 breaking-and-entering convictions, and not the underlying convictions themselves. *Cf. People v. Miller,* 152 Mich.App. 508, 394 N.W.2d 459, 461 (1986) (noting that, when a defendant is sentenced as a habitual offender, Michigan law requires that "the *sentence* for the underlying offense be vacated" (emphasis added)).

Defendant next objects to the inclusion in the PSIR of a 1991 conviction for operating under the influence of liquor. Defendant asserts that he did not have an attorney in connection with this offense, and that he does not "recall being told that he had the right to one." Again, as explained earlier, Defendant bears the burden of proving a deprivation of his right to have counsel appointed for him. *See Parke,* 506 U.S. at 33, 113 S.Ct. at 525. Defendant has not produced evidence of any such violation in connection with this 1991 conviction. Consequently, he has failed to meet his burden.

■ Next, Defendant contends that the Sentencing Guidelines preclude the use of his 1992 conviction for "absconding or forfeiting bond" in computing his criminal

---

15. This has little substantive impact on Defendant's overall sentence. As explained earlier, in computing the base offense level under the Sentencing Guidelines, the PSIR groups together counts one, two, and four, with no separate adjustment for the two convictions under counts one and two. Moreover, the PSIR recommends concurrent sentences for counts one and two.

history, because this offense is "similar to" the "contempt of court" offense which is expressly excluded from consideration under U.S.S.G. § 4A1.2(c)(1). However, this Guideline provision permits the exclusion only of certain "misdemeanor or petty offenses," while requiring that "all felony offenses [be] counted." U.S.S.G. § 4A1.2(c). Michigan law provides that "[a]ny person who shall abscond on or forfeit a bond given in any criminal proceedings wherein a felony is charged shall be deemed guilty of a felony." Mich. Comp.Laws § 750.199a. As this offense stemmed from Defendant's failure to appear for sentencing on one of his 1991 breaking-and-entering convictions, it was a felony offense, and is properly counted in determining Defendant's criminal history.

■ Finally, Defendant objects to the PSIR's assessment of one criminal history point under U.S.S.G. § 4A1.1(e) for committing the present offenses "less than two years after release from imprisonment" for his two 1991 breaking-and-entering offenses. Defendant notes that he was released from prison and placed on electronic monitoring on November 2, 1994, more than two years before he committed the present offenses on January 14, 1997. Although Defendant was not paroled until January 5, 1996, less than two years prior to the instant offenses, he argues that his "release from imprisonment" occurred back in November of 1994, and that the intervening period of electronic monitoring does not constitute "imprisonment" within the meaning of § 4A1.1(e) of the Guidelines.

The Court agrees. The Sixth Circuit has held that home detention is not a "sentence of imprisonment" under a neighboring Guideline provision, § 4A1.1(a). *See United States v. Jones,* 107 F.3d 1147, 1161–65 (6th Cir.), *cert. denied,* 521 U.S. 1127, 117 S.Ct. 2527, 138 L.Ed.2d 1027 (1997). Similarly, the Seventh Circuit concluded that "electronic home detention is not a form of 'imprisonment' " as that term is used in § 4A1.1(e). *United States v. Compton,* 82 F.3d 179, 183 (7th Cir.1996). Thus, no points may be assessed under § 4A1.1(e), and Defendant's criminal history points total nine, placing him in Criminal History Category IV.[16]

### III. *CONCLUSION*

For the reasons set forth above,

IT IS HEREBY ORDERED that Defendant's Motion for New Trial is DENIED.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss for Lack of Territorial Jurisdiction also is DENIED.

---

**16.** The PSIR recommended that Defendant be assessed ten criminal history points and placed in Category V, with a resulting sentencing range of 210–262 months. In light of the above reduction in criminal history points, the sentencing range under the Guidelines is now 188–235 months. Despite this change, the Court concludes that the 210-month sentence imposed at the September 7, 2000 sentencing hearing is appropriate. First, this sentence still lies well within the range set by the Guidelines. Moreover, as indicated at the September 7 hearing, the Court finds that the seriousness of the present offenses, combined with Defendant's undeniable status as a career offender with repeated interactions with the criminal justice system since the age of 19, provides a more than adequate justification for a 210-month sentence. Finally, having reconsidered Defendant's statements at sentencing in light of the adjusted sentencing range applicable to his felon-in-possession offense, the Court finds no basis for concluding that a lesser sentence is warranted.